# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

George Cowan, R. H. Casey and Nathan Hutkoff *v.* Pennsylvania Plate Glass Company. Appeal of the Exchange Bank of Wheeling.

*Corporations—Manufacturing corporations—Preference to officers.*

A corporation, the same as an individual, may prefer creditors, but if the preferred creditor is an officer of the corporation the burden is on him to show that the preference was in all respects fair and conscionable, and that it was not collusive for the mere purpose of preference.

A manufacturing corporation whose directors and treasurer know it to be heavily in debt, but do not believe it to be insolvent, may confess a judgment to its treasurer for borrowed money, which was absolutely necessary to pay wages and freight bills, and without which the works of the company would have been closed.

*Corporations—Receivers—Preferences—Judgments.*

Where a manufacturing corporation has been decreed insolvent, and a receiver has taken possession of its property, the status of all creditors is fixed as of the date of the appointment of the receiver, and judgments recovered after the appointment of the receiver, whether entered by leave of court or not, are not liens on the receivership fund, and are not entitled to any preference.

The treasurer of a private manufacturing corporation advanced money to the company which was absolutely necessary to pay wages and freight bills in order to keep the works in operation, upon the promise and agreement of the directors of the company to give him judgment notes to secure him. The company refused to give the notes, and subsequently, upon a stockholders' and creditors' bill, the company was declared insolvent, and a receiver was appointed. After the appointment of a receiver, the treas-

urer filed a bill against the company as sole defendant, alleging the above facts, which were admitted by the company, upon which the court below entered a cautionary judgment against the company, and decreed that assets to the amount of the judgment should be set aside to await the event in the bill in equity. *Held*, (1) that the court had no authority to enter the cautionary judgment; (2) that under the facts alleged in the treasurer's bill, the treasurer had no equity which entitled him to a preference over creditors who had no lien at the date of the appointment of a receiver; (3) that the facts being admitted, the treasurer's claim should have been adjudicated in distributing the receivers' fund, and the court should not have set aside a portion of the fund to await the final decision upon the treasurer's bill to compel specific performance.

Argued Oct. 21, 1897. Appeal, No. 143, Oct. T., 1897, by Exchange Bank of Wheeling, from decree of C. P. Westmoreland Co., No. 265, on bill in equity. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed in part.

Bill in equity for a receiver.

Exceptions to auditor's report distributing money in the hands of the receiver.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were (1) in decreeing that the judgment of the Exchange Bank of Wheeling recovered in the circuit court of the United States for the western district of Pennsylvania was not a lien upon the property of the Pennsylvania Plate Glass Company; (2) the decree of the court which was as follows:

The result of the conclusions of the court is that the schedule distributing the sum of $21,509.28 to the liens of record should be as follows:

1. To W. L. Kann's use, No. 545, May term,
    1894, balance, debt, interest on costs,    .    $ 7,007.35
2. To W. L. Kann, cautionary judgment, at
    267, equity,    .    .    .    .    .    .    14,501.93
                                                    —————————
                                                    $21,509.28

This last mentioned sum of $14,501.93 is to be held until the termination of the pending action at the foregoing case, and is then to be distributed by the court according to law.

The report of the auditor is modified by substituting the foregoing schedule for the corresponding one in his report, and thus amended, the report is confirmed absolutely; all exceptions consistent with such amended report are affirmed, and all inconsistent therewith are dismissed.

*C. C. Dickey,* with him *George Shiras 3d* and *W. K. Shiras,* for appellant.—Under the law of this state, a judgment is a lien only from the date only at which it is actually entered of record: Welsh v. Murray, 4 Dallas, 321; Patterson's App., 96 Pa. 93.

That the judgments of the federal courts are liens in the same manner and to the same extent as the judgments of the state courts has been repeatedly held by the Supreme Court of the United States: Ward v. Chamberlain, 2 Black, 430; Massingill v. Downs, 7 Howard, 760; Tayloe v. Thomson, 5 Peters, 369; Brown v. Pierce, 7 Wallace, 217.

The "cautionary judgment" in this case makes no pretense of being a final decree: Sager v. Mead, 164 Pa. 125.

The doctrine of preferences among unsecured creditors of corporations does not extend beyond quasi public corporations: Fidelity Ins. & S. Dep. v. Shenandoah Iron Co., 42 Fed. Rep. 372; Seventh Nat. Bank v. Shenandoah Iron Co., 35 Fed. Rep. 436; Burnham v. Bowen, 111 U. S. 781.

There is no act of assembly in this state that gives to a receiver of a court of equity anything more than an equitable interest in the property or right of action committed to his charge, or which invests him with the legal ownership: Singerly v. Fox, 75 Pa. 112; Chicago Bank v. Kansas City Bank, 136 U. S. 223; Yeager v. Wallace, 44 Pa. 294; Chautauqua County Bank v. Risley, 19 N. Y. 369; St. Louis & Sandoval Coal & Mining Co. v. Sandoval Coal & Mining Co., 111 Ill. 32.

*Vin. E. Williams,* with him *A. M. Sloan* and *W. H. Griffith,* for appellee.—The rights of all creditors became vested on March 19, 1894, when the fact was established that the defendant was insolvent, and the court appointed a receiver: Dean & Son's App., 98 Pa. 101; Jamison's Est., 163 Pa. 143; Oyster v. Short, 177 Pa. 601; Com. v. Ins. Co., 162 Pa. 595.

OPINION BY MR. JUSTICE DEAN, January 3, 1898:

The Pennsylvania Plate Glass Company in August, 1890, was chartered under the general corporation act of 1874, for the manufacture of glass near Irwin, Westmoreland County. The capital stock was $1,000,000. It owned in fee a tract of land of about twenty-eight acres on which it erected an extensive manufactory, costing about $850,000, wherein it commenced operations, and continued them until March 19, 1894, when these plaintiffs, for themselves and other stockholders and creditors, filed a bill for a decree of insolvency and the appointment of a receiver. The principal averments of the bill were: 1, that the corporation was insolvent; 2, that the interests of stockholders and creditors were in peril from seizure and sale and the sacrifice of the property on executions, which would result in expensive litigation. The prayer was, that a receiver be appointed to take into his possession all the property and assets of the corporation and administer them under the direction of the court, in such manner as would best promote the interests of all the creditors and stockholders. The facts averred in the bill were admitted by the corporation. Thereupon, the court appointed Joseph W. Stoner receiver; he duly qualified, gave bond, and took into his actual possession all the personal property, real estate, accounts and choses in action of the corporation. Before his appointment the company had executed and delivered to its treasurer, W. L. Kann, in consideration of money advanced and to be immediately advanced, a judgment bill in sum of $10,000, on which judgment was entered, execution issued, a levy made upon most of the personal property of the company, and the same sold by the sheriff. The whole sum realized on this execution was appropriated to preferred wage liens, paying about 37 per cent thereof. Afterwards, another sum realized on other personalty was appropriated to the same class of claims, paying an additional 13 per cent of them. On May 2, 1894, W. L. Kann, director and treasurer, to whom the $10,000 judgment note was given, filed a bill in equity against the company, averring: 1, that at different dates before the insolvency he had advanced money to the company to the amount of $42,500, for which money the company, antecedent to the advancements, had contracted to deliver to him judgment notes; 2, that the company,

except as to the one note of $10,000, refused to deliver to him the notes as it had agreed to do. He prayed that the company be directed to enter a cautionary judgment in his favor for $32,500, to cover the balance of said advancements. Before action on this bill was taken, on May 5, 1894, the receiver presented his petition to the court, praying for leave to sell the real estate, fixtures and machinery of the glass plant at public sale on May 31, following, subject to a first mortgage of $250,000, on terms, $10,000 when the property was knocked down, balance of one third on confirmation of sale, and the remaining two thirds in six and nine months. A decree as prayed for was made same day. Then two days before the day fixed for the sale, on May 29, 1894, the court took up the bill filed by Kann for a cautionary judgment, and directed that judgment in his favor for $32,500 be entered against the company nunc pro tunc, as of March 16, 1894, three days before the appointment of the receiver. On June 20, 1894, the receiver made report to the court that he had sold the real estate, fixtures, machinery, etc. to Kann, for $37,000, subject to a $250,000 mortgage. On July 2, following, the sale was confirmed, and on August 25, following, H. W. Walkinshaw, Esq., was appointed auditor to distribute this fund realized from the sale of the real estate; as all the personalty had not sufficed by former distribution to pay the preferred labor claims, there was nothing from that source to distribute.

At the audit, after deducting all preferred claims and costs of receivership, there remained for creditors a balance of $21,508.28. This sum was awarded as follows: To Kann, balance, $7,707.30 remaining of his first judgment, entered March 16, 1894, before the appointment of a receiver; on the second judgment, entered April 7, 1894, after the appointment of a receiver, $7,694.21. To Clark & Terhune, judgment entered April 21, 1894, by leave of court, after appointment of receiver, $367.98, and the balance, $6,439.74, was set apart for Kann's cautionary judgment. There was laid before the auditor a mechanic's lien of S. K. Smythe & Co. of $2,147, for the erection of a gas producer, a separate structure from the main building. This was disallowed, because no notice of intention to file the lien had been given the owner, as required by the act of assembly, and because the lien should have been filed against the separate building, and

not against the plant as a whole. This appellant, the Exchange Bank of Wheeling, laid before the auditor a judgment entered in the United States Circuit Court, on May 9, 1894, on a verdict. This the auditor decided was no lien on the real estate sold, because entered after the date of the receivership, and therefore must be postponed to those claims which were liens at that date, and to those which, by leave of court, became liens afterwards. The reasons given by the auditor for distribution to the Clark & Terhune and the second judgment of Kann, both entered of record after the appointment of the receiver, were, that proceedings to obtain judgment had been commenced before the appointment of the receiver, and, by express leave of court, these proceedings were prosecuted to final judgment after the appointment, but before sale of the real estate. As to the appropriation to the cautionary judgment, the auditor was of the opinion that, having by order of court been entered nunc pro tunc as if before the date of the receivership, it was entitled to recognition as a lien in its order, except as to intervening rights, and as to such rights but two liens intervened, the second judgment of Kann and that of Clark & Terhune, both of which were allowed. Quite a number of exceptions were filed of record, but only a few were pressed in the court below, and still fewer on the assignments of error here.

Two principal questions were raised before the auditor, both by judgment and general creditors. 1. They protested against distribution to the first Kann judgment, actually entered before the appointment of the receiver, because it was given in favor of the treasurer and a director of the corporation, at a time when the obligor and obligee in the judgment note had full knowledge of the corporation's insolvency; thus a preference was created in the officer's favor to the prejudice of creditors who were without such knowledge. 2. It was maintained by the general or unsecured creditors, that if the judgments were not invalid by reason of the relation of the parties to them then, all judgments entered after the appointment of a receiver must come in pro rata on the fund, for the reason, that as soon as the corporate property, personal and real, passed from the dominion of the corporation to that of the receiver it was in custodia legis, and no longer subject to lien by attachment or judgment at the instance of a creditor. As before noticed, the auditor in effect,

ruled against both propositions, and exceptions to his conclusions were filed by the parties affected by his rulings.

After hearing the exceptions, the learned judge of the court below held, that as long as a corporation held possession of its property, that is, before the appointment of a receiver, it might prefer creditors the same as an individual, with this distinction, that if the preferred creditor was an officer, the burden was on him to show that the preference was in all respects fair and conscionable, and that it was not collusive, for the mere purpose of preference, but under the circumstances was just. The knowledge of the corporate officer that his debt is in peril and the power to some extent to prefer himself, raises the presumption, that he has taken advantage of his special knowledge and special power, to the prejudice of other creditors whose debts are equally meritorious. In so deciding, we think there was no error. As is said in Ashhurst's Appeal, 60 Pa. 290, it does not follow that a preference is void, merely because given by an insolvent corporation to an officer; it is only voidable; but such proceedings "are carefully watched, and their fairness must be shown." As to the first judgment note given to Kann, and entered of record on March 16, 1894, three days before the appointment of the receiver, the circumstances attending the giving of this note, whereby a preference was created, were these: the company was sorely in need of money about the beginning of the year 1894; immediately prior to January 12, of that year, Kann advanced to it $3,500; on January 12, he advanced $2,500; three days afterwards, $5,000; January 16, $6,000. All these advances were made upon the promise, that the company would deliver therefor to Kann its notes with power of attorney to confess judgment. On January 15, 1894, the executive committee authorized the execution and delivery to him of one judgment note in the sum of $10,000. The board of directors afterwards approved and ratified the action of the committee; the note was executed and delivered to Kann, who retained it in his possession until March 16, following, when he entered it of record. It is not disputed that Kann actually advanced the money, nor that it was used for the benefit of the company; he charged no commission or brokerage; the money was applied to payment of wages, then largely in arrears, and to freights, either of which if not paid would have resulted in a closing of the

works. This was a financially embarrassed corporation, in straits for ready money; the directors believed it might survive its difficulties if it obtained a comparatively small amount for its then pressing necessities; it is doubtful if it could have obtained the money from any lender, banker or individual, on better terms, or on other security. The object was not to benefit Kann, but the corporation, and all others interested in its success. The security was given two months before the appointment of a receiver. From the circumstances, it is altogether reasonable to suppose that, while the parties knew the company was heavily in debt, neither of them believed it was insolvent. We discover no semblance of unfairness or collusion, or an intent to prejudice other creditors in the transaction. We have so fully expressed our views on this question in Mueller et al. v. The Monongahela Fire Clay Co. et al., argued at this term, on October 13, opinion handed down this day, 183 Pa. 450, that we need not repeat what was there said. This disposes of so much of appellant's fourth assignment of error as complains of the appropriation to Kann's first judgment entered before the appointment of the receiver.

As to the judgment entered after the receivership by leave of court and the judgment of this appellant entered in the Circuit Court afterwards, we think the court below rightly held that they were not liens on the corporate real estate, and were entitled to no preference in distribution. This was a private manufacturing corporation, owing no special duty to the public, and the latter had no direct interest in the continuance of its operations. Creditors and stockholders alone had a direct special interest in the property. The facts which would move a court of equity to place a railroad or other common carrier corporation in the hands of a receiver might not avail to prompt the same decree as against a manufacturing corporation. In the first case, the court must consider the interests of the public, as well as those of creditors and stockholders. Any act on the part of the corporate officers which would interrupt or suspend the regular continued operations of the corporation in its public capacity, whereby serious inconvenience and loss would result to the public, might be sufficient to move the court to appoint a receiver. And this, even where no complaint is made by stockholders or creditors, for its franchises and privileges were

conferred on it by the public, on the condition, express or implied, that it would exercise its functions for the benefit of the public, as well as for the benefit of stockholders. Necessarily, the effect of the appointment of a receiver on the rights and remedies of creditors of private corporations must in many cases be different from that on the rights and remedies of creditors of a public corporation. In the case of a private corporation the public has no interest which gives it the right to be heard; any averment that will avail to create a receivership must be such as will show that a receivership is necessary to protect and promote the interest of the stockholders and creditors. A petition of creditors or stockholders might set forth facts which would warrant a temporary receivership, and a temporary possession by him of the corporate property, real and personal, without affecting the legal title to either, and leaving the corporation subject to suits, and its property to liens, as before. Such temporary receivership may be created where the corporation is entirely solvent, yet the corporate officers, by mismanagement or fraud, are jeopardizing the property; this gives stockholders and creditors, especially where the claims of the latter have not matured, a right to complain and ask for a receivership: St. Louis and Sandoval Coal & Mining Co. v. Edwards, 103 Ill. 472; Avery v. Blees Mfg. Co., 27 N. J. Eq. 412. And it is not enough to defeat jurisdiction in equity, that there is a remedy at law; the remedy must be complete, prompt and efficient:" Gluck & Becker on Receivers of Corporations, sec. 19, for which many authorities are cited in the notes. While we hold it to be settled on reason and authority, that there may be many cases in which the appointment of a receiver does not change the status of the corporate property or suspend the ordinary remedy of the creditor, still there are many instances, where from the very nature of the case the ordinary remedy of the creditor is absolutely suspended when the receivership is established. And this is one of them. The bill in this case averred that plaintiffs were both stockholders and creditors; that the company was insolvent; that one judgment for $10,000 had been entered, execution issued thereon, and the personal property seized; that suits had been brought by creditors, and a large number of others would soon be brought, the property seized and sold piecemeal; that it would bring a much larger sum if sold as a

whole, that is, as one manufacturing plant; they therefore prayed, that a receiver be appointed to take into his custody all of the assets of the company and administer them for the benefit of all the creditors and stockholders, under the direction of the court. In answer filed the corporation admitted the facts averred, and the court adjudged the averments of the bill to be true. Thereupon, the receiver was appointed to receive into his custody all the property and assets of the company of whatever description, to abide the further order of the court; to take immediate charge of the plant and property of the corporation, insure it, and employ watchmen. At the same time an order was made staying all executions and further proceedings against the company and its property, preserving the rights of liens already attached. It will be noticed the fact of insolvency was adjudicated, and the court through its representative took actual possession of all the assets of the company, both personal and real, to administer them for the benefit of all the creditors and stockholders. In effect, the adjudication determined, that the court would take into possession the assets, turn them into cash and distribute them among the creditors according to the legal status of the company and creditors on March 19, 1894, the day the receiver was appointed. On that day the property went into the custody of the law, and subsequent events could neither modify nor enlarge the rights of creditors.

Gluck and Becker on Receivers of Corporations, sec. 40 thus state the situation of the property when the receiver takes possession: " The property of a corporation placed in the possession of a receiver is regarded as being in custodia legis. When a sale is decreed by the court to be made in a proper case of such property, it is not a question whether the receiver has title, but whether the court has power to pass the title of the corporation whose estate is placed in the hands of a receiver. Sales so made, whether before final judgment or decretal orders or thereafter, are judicial in their nature, and binding on the corporation as fully as its own act. The title to the property sold passes, not because the ministerial officer has title, but because the law casts upon him when acting under its authority the power to make a sale which will bind the corporation. No assignment is therefore necessary to entitle the court appointing a receiver to pass title through a sale made by him under its

order." And for this text ample authority is given. We cite it, not because the power of the court is questioned, but as indicating the entire change in the condition of the property, and the absolute possession thereof by the law. If, as argued by appellant, the property until the sale still remained subject to liens obtained by proceedings at law in the federal court, then such proceedings would defeat the very purpose of a receivership. The insolvency was a fact; to avoid sacrifice of the assets, by executions and sales on many claims, with the attendant costs, the court took possession of the property that it might be turned into money for equitable distribution among all the creditors as they stood on March 19, 1894. If any creditor can, regardless of the change in the situation of the property made on that day, obtain a lien by adverse proceedings against the corporation, then the property is still within corporate dominion, and the decree of the court goes for nothing. The argument leads to a conclusion wholly inconsistent with the very purpose of the receivership. The decided weight of authority in regard to common law receivership is that in substance, as stated by Taylor on Corporations, sec. 813: "Where a judgment has been recovered against a corporation after the appointment of a receiver, it does not give the creditor who has obtained it a preference over other creditors in the distribution of corporate assets." In Dean & Son's Appeal, 98 Pa. 104, the appellants on January 28, 1878, had insured certain property against loss by fire in the Newton Fire Ins. Co. May 18, following, the court of common pleas of Dauphin, at the instance of the attorney general, declared the company insolvent, and appointed a receiver, who immediately notified all policy holders, among them appellants, to forward to him their policies for the purpose of computing the amount of return premium due them. Appellants did not return their policy. On November 29, 1878, following, before any distribution was made by the receiver, the property was destroyed by fire; on distribution, appellants claimed a pro rata dividend on the amount of their loss, arguing that distribution was to be made among all the creditors in proportion to their claims at the date of distribution. This court held that the claim could not be sustained; that the situation was analogous to that of the creditors of an assignor in an assignment under the insolvent laws, as to whom it was decided

in Miller's Appeal, 35 Pa. 481, that their rights must be determined as of the date of the assignment. In the case before the Court, the right of appellants, as of all creditors, must be determined as of the date the insolvency was adjudged which entitled them only to a ratable return of premiums paid. The only distinction between Dean & Son's Appeal, supra, and the one before us is in the consequences following the decree of insolvency; there the proceedings against the corporation were initiated and carried on by the commonwealth, and the fact of insolvency was followed, not only by an order for receiving and distributing the assets, but also by a decree for a dissolution of the corporation. Here there was no decree for a dissolution, for the court had no jurisdiction at the instance of creditors to make one. But the corporation, to all intents and purposes, practically, by the appointment of a receiver to take possession of all its assets, ceased to exist. Therefore we are of opinion the court below was clearly right in its conclusion as follows: " We need not stop to discuss the auditor's reasons for making the distribution, as we are of opinion the judgments recovered after the appointment of the receiver, whether judgment was entered by leave of court or not, are not liens on the receivership funds."

This leaves to be considered only the question raised by setting aside the balance of the fund to await the final event of a suit in equity by Kann against the company to compel specific performance of a contract. It will be noticed in our statement of facts heretofore made that on May 29, 1894, the court ordered to be entered what is termed a cautionary judgment, in favor of Kann, for $32,500, as of the date of March 16, 1894, three days before the appointment of the receiver. Whether the judgment should stand with all the advantage of a lien, as of that date, was to be determined on final hearing in the equity suit, which at the date of the audit had not taken place. This ties up for the time being $14,501.93 of the fund. We see no reason why the question raised by the bill in equity should not have been finally disposed of by the court below, for taking every averment to be true, there is no conclusion, legal or equitable, which warrants a preference to this judgment as a lien on the fund. What does the bill which forms the foundation of the judgment aver? 1. That Kann, director and treasurer of the company,

before the appointment of the receiver, had advanced to the company in cash and indorsements $42,500, for the purpose of enabling the company to continue its business. 2. That these advancements were made on the condition and understanding with the company that it would deliver to him therefor the company's demand notes with power of attorney to confess judgment. 3. That on January 15, 1894, the executive committee adopted a resolution that the company deliver to Kann as collateral for money already advanced by him a judgment note for $10,000 and any other amounts required to meet maturing liabilities of the company, and that February 14, 1894, the board of directors, by formal resolution, ratified and confirmed the action of the executive committee. 4. That relying upon this resolution and the verbal promise of the officers of the company, and to relieve the company from financial embarrassment, he made advances to the amount of $42,500 for which he received but one judgment note for $10,000, which he entered of record before the appointment of the receiver, leaving still due him $32,500 for which he had received no judgment note. 5. That afterwards, Phillip Semmer, president of the company, refused to join in the execution of the aforesaid note, excepting as to the one for $10,000. 6. That the money so advanced was used in paying wages and for other purposes, and was absolutely necessary to the continuance of the company's operations.

Joseph W. Stoner, the secretary of the company made answer to the bill, admitting all the material averments to be true. No creditor was made a party defendant. Stoner, the receiver, was not, as such, made a party, although named in it is as secretary of the company. On this bill and answer, the court made the order for the cautionary judgment. If there were any issue of fact raised by this proceeding it would probably be best to await a decree before passing on the right of plaintiff. But the party defendant to the bill admits the facts. Therefore, there is no reason why the legal and equitable rights of the plaintiff in the cautionary judgment should not as a mere legal conclusion, be passed upon now.

As before noticed in a railroad receivership, the court will make orders creating equitable liens as to debts antedating the receivership, which they will not make as to receiverships of private corporations. The public is interested in the uninter-

rupted operations of the company; wages for a limited time earned before the change of possession will be paid on the ground that, if this were not so, employees apprehensive of insolvency would cease work before the change, and stop the operations of the road. On the same grounds fuel supplies and equipment absolutely necessary to the daily operations have been allowed, although delivery has been made immediately before the receivership ; and in some other cases, like claims in character have been decreed equitable liens, and entitled to preference in distribution. In nearly every case however the payment is made out of the income derived·from the road while in the hands of the receiver. We are not now speaking of decrees authorizing receivers' certificates to make good the difference between income and operating expenses, to which the court may give preference over mortgage creditors, but only as to rights of creditors whose claims antedate the receivership. As is said by WAITE, C. J., in Burnham v. Bowen, 111 U. S. 776, " The business of a railroad company should be treated by a court of equity as a " going concern," not to be embarrassed by any unnecessary interference with the relations of those engaged in or affected by it."

But there is no public interest to be subserved by giving a preference lien to creditors who have advanced money to keep on its feet an embarrassed manufacturing corporation. Assume the absolute necessity of such advances, wherein does Kann's equity rise higher than that of any other creditor ? It is argued that part of the money was applied to wages in arrear; if they had not been paid, a strike would have resulted ; if freights had not been paid, the railroads would have refused to carry and the plant would have been closed. But the same result would have followed if the company had refused payment for its raw material, sand, lime and fuel. Equity was not bound, as in the case of a railroad company, to treat it as a "going concern." As a private business corporation it was a "stopping concern" whenever it failed to pay its debts to its employees, its freights to the railroads, or its notes in bank. Nor does the fact that the advances were made on a promise by the board, of which Kann was a member, to give judgment notes as collateral, raise an equity in his favor superior to that of other creditors. This appellant, the Exchange Bank, had a written promise of the

company to pay to it $2,900, on August 31, 1893, for $2,900 advanced by it on May 31, 1893, which money was used by the company in its operations. The company wholly failed to keep its written promise, although the bank parted with its money on the faith of the promise. And so, doubtless, was the case with every other creditor; each one parted with his money on the faith of a like promise, express or implied, and the money was used to promote the interests of the company. Kann parted with his money on a promise that a collateral security would be delivered him; the company broke its promise. There was no dishonesty other than is incident to every debtor's violated promise. Taking his case in the view most favorable to him, on his own averments, he has no equity superior to that of any other creditor, and the court below erred in not so deciding. The entry of the lien long after the receivership, as of a date before it, was the exercise of a more than doubtful power; it was without notice to the other creditors affected by it; it was valueless as a lien, and wholly inconsistent with the reasoning given by the court to sustain its action with reference to Kann's second judgment and that of Terhune & Clark, which it declared were not liens. Both of these were entered after the court had assumed possession of the real estate by the appointment of a receiver; both were entered by express leave of court; both were declared no liens because at the date of entry the property was in custodia legis. There was a reservation in Kann's decree that rights intervening should not be affected by the nunc pro tunc entry. If the property went into the custody of the law on March 19, when the receiver was appointed and the status of all creditors was established by their relation to the property at that date, as the court decided, then the right of every one of them to a pro rata distribution of the fund remained unaffected by the decree. All our legislation and decisions on the subject of judgment liens enact and declare that such liens shall date from the day of actual entry on the lien docket. In Welch v. Murray, 4 Yeates, 197, it is said: "The uniform, uninterrupted practice in Pennsylvania for more than a century has been to consider the binding effect of judgments upon lands to take place only from the actual entry of the judgments. Judgments thus entered have never been supposed liable to be affected by fictions and relations." This judgment being actu-

ally entered on May 29, 1894, long after the receivership, whatever effect it could have as a judgment in determining the amount of plaintiff's claim, it could have none as a lien on the fund by the order of the court. If plaintiff had, by reason of the character of his advancements and promise of defendant, an equitable lien on the fund superior to other creditors, that must be worked out by establishing his equity before the auditor, and not by acquiring a nominally legal lien by an ex parte order of the court. But as we have shown, he had no equity to assert before the auditor.

What we have said disposes of all the assignments of error preferred by this appellant. It is therefore ordered that so much of the decree of the court below as awards to judgment No. 545, May term, 1894, of William L. Kann, $7,007.35, as a lien creditor, and refuses to recognize as liens claims of Terhune & Clark, S. R. Smythe & Co., the Exchange Bank of Wheeling, judgment of William L. Kann, No. 556, May term, 1894, be affirmed; and further so much of said decree as sets apart $14,501.93 of the fund to await event of decree in bill of equity, William L. Kann v. The Pennsylvania Plate Gas Co., be reversed and set aside. It is further ordered that the court below proceed to distribute the said $14,501.93 pro rata to the claims of unsecured creditors. Costs to be paid by appellee, William L. Kann.