**UNITED STATES of America**

v.

**Troy N. BEAVER and Margaret F. Beaver, His Wife, et al.**

**Margiotti & Casey, G. W. Musser and Francis J. Mottey, Appellants.**

**No. 12290.**

United States Court of Appeals Third Circuit.

Argued Dec. 16, 1957.

Decided Feb. 14, 1958.

———◆———

Vincent M. Casey, Pittsburgh, Pa. (Margiotti & Casey, Pittsburgh, Pa., G. W. Musser, Indiana, Pa., Francis J. Mottey, on the brief), for appellants.

George F. Lynch, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., D. Malcolm Anderson, U. S. Atty., Thomas J. Shannon, Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The issue presented for our decision is whether under the provisions of Sections 3670 and 3672 of the Internal Revenue Code of 1939, 26 U.S.C. §§ 3670, 3672, the judgment claim of Messrs. Margiotti and Casey, attorneys for Troy N. Beaver, is entitled to priority of payment over claims asserted by the United States under federal tax liens.

There is no dispute as to the facts. On November 12, 1948, a temporary receiver was appointed by the Court of Common Pleas of Jefferson County, Pennsylvania, for Troy N. Beaver trading and doing business as Troy N. Beaver Contracting Company. The receiver was appointed because O'Brien claimed to be a partner of Beaver and sought an accounting. Margiotti and Casey, members of the Allegheny County Bar, represented Beaver in this equity action, defending on the ground that O'Brien was not a partner.

Some time prior to the commencement of the action in the Court of Common Pleas of Jefferson County Beaver had entered into two contracts with the Commonwealth of Pennsylvania for the construction of two roads, one known as the "New Kensington Job" and the other as the "Shenandoah Job." Beaver's surety on his performance bond given to the Commonwealth of Pennsylvania was the United States Fidelity and Guaranty Company. Beaver was not able to complete the roads and the bonding company took over and finished the jobs. The receiver did not do any work or cause any work to be done on the jobs through his agents. This was so despite an order of April 9, 1949 entered by the Court of Common Pleas which authorized the receiver to employ labor and supervise the road-building in collaboration with the Pennsylvania Department of Highways.

On December 6, 1949, the Court of Common Pleas of Jefferson County held in substance that O'Brien was not a partner and indicated that it would discharge the receiver as soon as he could wind up receivership affairs. On March 23, 1950, the Court terminated the receivership and decreed that the funds, if any, due on the road construction jobs should be paid by the Commonwealth of Pennsylvania to the surety, United States Fidelity and Guaranty Company. The surety was ordered by the court to reimburse itself for moneys expended on labor and material in completing the jobs and to pay any credit balance to Casey and Margiotti. The surety realiz-

ed a surplus of $9,498.40 and this is the fund which is the subject of the present litigation.

Prior to the entry of the decree on March 23, 1950 by the Court of Common Pleas of Jefferson County, the United States filed notices of liens for unpaid taxes due from Beaver with the Prothonotary of the Jefferson County Court. The lien if valid is sufficient to exhaust the fund in this case.[1] The money due from the Commonwealth on the road construction jobs was paid directly to the surety by the Commonwealth and did not come into the hands of the receiver. The United States asserts that it is entitled to the fund since its tax lien preceded in time the judgment claim of Margiotti and Casey. The court below concluded that the taxpayer had a property right in the surplus fund, that since the tax liens were recorded prior to the date of the Jefferson County judgment, the lien of the United States entitled it to priority of payment over the attorneys' claim. The court entered judgment in favor of the United States in the sum of $9,498.40. The appeal followed.

Margiotti and Casey say that they are entitled to the fund on either of two alternate theories: that Beaver had no property right in the fund and therefore the liens of the United States for taxes against the taxpayer could not attach thereto, or that the fund was subject to their alleged prior lien, based upon the decree of the Court of Common Pleas of Jefferson County.

In support of the first theory Margiotti and Casey contend that the appointment of the receiver transferred all right, title, and interest in Beaver's property to the receiver. They say that since the fund was no longer Beaver's,

the tax liens against Beaver could not attach themselves to the fund. This theory fails to distinguish the difference between a receivership which arises from insolvency and one which is created temporarily by a court of equity under its general power to preserve the assets until the determination of a matter pending before it.

█ In receivership arising from insolvency title to property vests in the receiver. Porter v. Sabin, 1893, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815. This is so because property of a debtor may be liquidated and distributed to his creditors. A temporary receiver, on the other hand, is but a mere custodian of property and title remains in the owner. National Guarantee Credit Corp. v. Worth & Co., 1922, 274 Pa. 148, 117 A. 914; Tardy's Smith on Receivers (2d ed.) p. 14. There can be no doubt that Beaver retained and possessed a property right in any surplus due from the Commonwealth after the road contracts were fulfilled. Since this property right was not divested by the appointment of a receiver, the rights of creditors against the fund were not suspended. Cowan v. Pennsylvania Plate Glass Co., 184 Pa. 1, 9, 38 A. 1075, 1078(1898); Blum Bros. v. Girard Nat. Bank, 1915, 248 Pa. 148, 158, 93 A. 940, 943.

██ Although the effect of an equity receivership is determined, in this case, by the law of Pennsylvania, the priority to be awarded to United States tax liens is purely a federal question. United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 67

---

1. The notices of tax liens filed prior to March 23, 1950, covered outstanding amounts of taxes in excess of $60,000. After the filing of the complaint herein by the United States in October 1952, payments totaling approximately $35,000 were received by the District Director and applied against Beaver's tax liability leaving outstanding under liens filed prior to March 23, 1950, a sum substantially in excess of the fund here involved. At the time of trial it was stipulated, in conformity with the facts set out in the complaint, that this balance was in the amount of $33,133.61, that it bore an assessment date of July 7, 1949, and that notice thereof was filed in the Prothonotary's Office of Jefferson County, Pennsylvania, on August 25, 1949.

S.Ct. 340, 91 L.Ed. 348. Since the case of Rankin v. Scott, 1827, 12 Wheat. 177, 6 L.Ed. 592, 25 U.S. 177, 179, wherein Mr. Chief Justice Marshall enunciated the principle "that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds," the federal rule has been that "the first in time is the first in right," United States v. City of New Britain, 1954, 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 and this is true whether or not the property be after acquired. Glass City Bank of Jeanette, Pa., v. United States, 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56.

■ The Internal Revenue Code of 1939, Section 3670, states: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Section 3672 of the Internal Revenue Code of 1939,[2] however, would make such a lien ineffective as against the order of March 23, 1950 of the Court of Common Pleas of Jefferson County directing the balance of the fund to be made over to Margiotti and Casey unless the tax liens were filed with the Prothonotary of the

Court before the entry of the order of March 23, 1950. The record is clear that the tax liens were filed in the Prothonotary's office of Jefferson County prior to the order of the Court of Common Pleas of March 23, 1950. Upon filing, the tax liens took priority over the claims of Margiotti and Casey.

■ But Margiotti and Casey make a further contention in this connection. They argue that the provisions of Section 39.274–1 of the Internal Revenue Regulations, 26 C.F.R. requires the United States "[D]uring a bankruptcy proceeding, or in an equity proceeding" to file its claim in that proceeding if it desires to share in the property held by the receiver or trustee. In our opinion subsections (a) and (d) of Section 39.274–1 [3] are inapplicable under the circumstances at bar. The regulation prohibits the United States from distraining upon assets under the control of a bankruptcy or equity court. The regulation was intended to require a Director of Internal Revenue to file a claim in the bankruptcy or equity proceedings in order that obligations due the United States might be paid in due course and according to law. The emphasis was upon payment of the claims of the United States along with other claims due from

2. Section 3672(a) (1), 26 U.S.C. § 3672 (a)(1), provides:
   "(a) *Invalidity of lien without notice.* Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—
   "(1) *Under State or Territorial laws.* In the office in which the filing of such notice is authorized by the laws of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office with the State or Territory. * * *"

3. Subsections (a) and (d) of Section 39.-274–1, 26 C.F.R., provide as follows:
   "(a) During a bankruptcy proceeding, or an equity receivership proceeding in either a Federal or a State court, the assets of the taxpayer are in general under the control of the court in which such proceeding is pending, and the collection of taxes cannot be made by distraining upon such assets. However, any assets

which under applicable provisions of law are not under the control of the court may be subject to distraint."

"(d) District directors of internal revenue should promptly after notice of outstanding liability against a taxpayer in any bankruptcy or receivership proceeding, and in any event within the time limited by the appropriate provisions of the Bankruptcy Act (11 U.S.C.A. § 1 et seq.), and the orders of the court in which such proceeding is pending, file claim covering such liability in the court in which such proceeding is pending. Such claim should be filed whether the unpaid taxes involved have been assessed or not, except in cases where the departmental instructions direct otherwise; for example, where the payment of the taxes is secured by a sufficient bond. At the same time claim is filed with the bankruptcy or receivership court, the district director of internal revenue will send notice and demand for payment to the taxpayer together with a copy of such claim."

bankruptcy or receivership assets to creditors. Liquidation and disbursement was looked to. In the case at bar, as we have shown, the title to Beaver's property never passed to the receiver who was temporary and a mere custodian. Nor was there any distraint or attempt by the Director of Internal Revenue to subject Beaver's assets to execution under the tax lien during the pendency of the receivership proceedings. It is obvious that this contention of Margiotti and Casey must fall.

The judgment of the court below will be affirmed.