**UNITED STATES of America,**
**Plaintiff,**

v.

**William J. BROSNAN, Francis H. Jacob, George H. A. Parkman, Gladys Marie Short Parkman and Mountain Engineering Company, Defendant.**

**Civ. A. No. 15973.**

United States District Court
W. D. Pennsylvania.

April 29, 1958.

D. M. Anderson, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Moorhead & Knox, William L. Jacob, Kountz, Fry & Meyer, Pittsburgh, Pa., for defendants.

WILLSON, District Judge.

In this civil action the United States seeks to enforce liens for unpaid taxes. The controversy arises because admit-

tedly the tax liens were junior in point of time to a duly recorded purchase money mortgage on the real property in question. The mortgage has been foreclosed. The defendants, who were the purchasers at the mortgage foreclosure sale, claim that the mortgage foreclosure proceedings divested the unpaid tax liens of the Government. The Government contends that the unpaid tax liens were not divested by the foreclosure sale. The Government is proceeding under the authority of 26 U.S.C.A. § 7403, entitled "Action to enforce lien or to subject property to payment of tax." In the alternative, under 28 U.S.C.A. § 2410, the Government seeks the right to redeem the real property from the foreclosure sale which has been held under and pursuant to the laws of the State of Pennsylvania.

Defendants are William J. Brosnan and Francis H. Jacob, the purchasers of the property at the mortgage foreclosure sale, who had, prior to the sale, purchased the mortgage from Martha M. Berg, one of the original mortgagees, who was named defendant but has been dismissed. Other defendants are George H. A. Parkman and Gladys Marie Short Parkman, who were owners of the property during times when some of the tax liens were assessed and filed, and Mountain Engineering Company, a corporation, who also owned the property at various times during which tax liens were assessed and filed in the Office of the Prothonotary of Allegheny County.

The case was tried non-jury upon evidence which was largely stipulated; however, some testimony was taken. There is no material conflict in the evidence as to what has occurred. Findings of fact and conclusions of law will be found in this opinion as permitted by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The property in question consists of 175 acres more or less and is valuable. It was formerly owned by Martha M. Berg and her husband, J. D. Berg. On January 28, 1948, the Bergs conveyed the property to George H. A. Parkman,

Jr. and his wife Gladys Marie Short Parkman, taking back a purchase money mortgage dated January 28, 1948, and recorded in Mortgage Book Volume 2924, page 48, for $45,000 and a mortgage bond in the penal sum of $90,000. The realty was then conveyed and reconveyed by the Parkmans to Mountain Engineering Company, a corporation, which they controlled, and back again on at least two occasions. These conveyances were all subject to the purchase money mortgage. During a period when the corporation owned the property, certain Federal Unemployment Tax Act and Federal Insurance Contributions Act tax deficiencies of Mountain Engineering Company, which were assessed by the Commissioner of Internal Revenue, became liens on the involved real estate. These liens were filed of record in the office of the Prothonotary of Allegheny County between April 12, 1949 and November 28, 1951.

In addition, the Commissioner of Internal Revenue assessed an income tax deficiency of $9,767.68 against George H. A. Parkman and Gladys Marie Short Parkman on July 6, 1955, at a time when they owned the property, this assessment being filed in the office of the Prothonotary of Allegheny County, Pennsylvania, on October 13, 1955.

It thus appears and is conceded that all the Government tax liens were filed of record in the office of the Prothonotary subsequent to the recording of the mortgage.

Default having occurred in the payment of the mortgage debt, on June 7, 1955, Martha M. Berg, the surviving mortgagee, caused a confession of judgment on the mortgage bond to be entered in the office of the Prothonotary of Allegheny County at D. S. B. 3089 July Term 1955. The debt recited in the judgment is the sum of $43,135 principal, plus interest from June 1, 1955.

Martha Berg's attorney caused a praecipe to issue by the Prothonotary, directing the sheriff to sell the property on a writ of fieri facias. The sale was duly advertised as required by state law and

was originally set for July 5, 1955, but by various orders of the Common Pleas Court, the sale was postponed from July 5, 1955 to January 3, 1956, at which time the sale was held by the sheriff, who sold the property to defendants Brosnan and Jacob, who in the meantime, in December, 1955, had purchased the mortgage and bond from Martha M. Berg. At the sale the defendant purchasers paid the sheriff the sum of $6,203.23.

■ At this point the action of Martha M. Berg in invoking 28 U.S.C.A. § 2410 should be mentioned. On September 22, 1955, she filed a petition in the Court of Common Pleas of Allegheny County for a rule upon the United States and the Parkmans to show cause why they should not be made parties to the foreclosure proceedings. The rule was granted and served upon the United States and the Parkmans. No answer or response was filed by either the Parkmans or the United States within the sixty day period set forth in the rule. On December 20, 1955, the rule was made absolute by the state court. In the rule to show cause served upon the United States, the judgment creditor sought an adjudication of the state court that the Government tax liens would be divested by the sale on the writ of fieri facias issued on the judgment confessed on the mortgage bond. Such a judgment under Pennsylvania law makes the lien of a judgment confessed on a mortgage bond relate back to the entry of the recording of the mortgage. Boyer v. Webber, 22 Pa.Super. 35; DeWitt's Appeal, 76 Pa. 283.

As mentioned, the Government paid no attention to the state court proceedings until January 3, 1957, which the Government contends is one day less than one year from the date of the sale of the property and is the last day it could redeem the property according to its right of redemption secured to it under 28 U.S.C.A. § 2410. On that day, January 3, 1957, Robert X. Blair, revenue officer, attempted to effect a redemption of the property by making a tender. He testified that he had a Government check in

the amount of $6,575.42, which represented the amount bid at the sheriff's sale plus interest, and that he contacted the defendant William Brosnan, stated his purpose, offered Mr. Brosnan the check and it was refused, because Mr. Brosnan considered the amount to be wholly inadequate. He, however, referred the revenue officer to his lawyer, William L. Jacob, Esq. No attempt was made to tender redemption money to the other co-owner, Francis H. Jacob, because the attorney, William L. Jacob, Esq., indicated that the sum offered would not be accepted.

It should be emphasized that the foregoing was the only effort made by the Government to redeem. During the one year interval both the purchasers at the sale resided in and had places of business in the greater metropolitan area of Pittsburgh and had telephones listed in their names at their homes and places of business.

On January 3, 1957, defendants Brosnan and Jacob contend that they had in the property $55,591.28, which was the amount of their mortgage debt reduced to judgment, plus interest, taxes and costs. They contend that that was the amount the Government should have tendered in redemption of the premises under Section 2410.

### Discussion of Law and Conclusions

If the mortgagee has correctly and validly made the United States a party to the foreclosure action under 28 U.S. C.A. § 2410, and the sale was a judicial one, the foreclosure of the mortgage discharged and extinguished the unpaid taxes as liens on the property and transferred such liens to the fund created by such sale, if any. However, it is my opinion that the defendants did not properly invoke Section 2410 to make the United States a party to the state action.

■ It must be emphasized that the judgment of confession on the mortgage bond had already been entered and the property had been advertised and the sale date fixed when a rule to show

cause was issued calling upon the United States to answer as to why it should not be made a party. It seems clear that to properly invoke Section 2410, the United States must be named initially as a defendant in the state court civil action. The statute permits the United States to be named as a defendant, the Government thus waiving its immunity, in a proceeding brought to foreclose a mortgage or other lien "* * * * upon real or personal property on which the United States has or claims a mortgage *or other lien*." But the statute requires that a complaint " * * * shall set forth with particularity the nature of the interest or lien of the United States." It contemplates that the United States shall have sixty days to answer to the merits. The most that can be said about the proceedings in the instant case is that an attempt was made to make the United States a party to the execution of a judgment already entered, to-wit, on June 7, 1955. One method that Pennsylvania lawyers use under this section, which in the opinion of this court is effective and valid, is to commence a mortgage foreclosure by the issuance of a scire facias sur mortgage. If that proceeding is used, the United States can be made a party prior to the entry of the judgment of foreclosure on the mortgage. The judgment entered in that event would be a judgment on the merits binding upon the United States as to the amount due on the mortgage debt, and of the nature and character of the Government's lien. I do not think that the statute requires that the pleadings served upon the Government must necessarily be designated a complaint, but a pleading in substantial compliance with the statute is required. It is therefore concluded that Section 2410 was not validly invoked by the mortgagee in the foreclosure of the instant mortgage.

The Government claims that it had the right under Section 2410, if it was made a party to the state action, to redeem the property within one year as provided in that section. This issue is quickly disposed of.

Just recently, that is on April 11, 1958, the Court of Appeals decided United States v. Cless, 3 Cir., 254 F.2d 590. This decision determines that Section 2410 is not mandatory but only permissive in the foreclosure of a first mortgage on property which is encumbered by a second mortgage owned by the United States. Having held that Section 2410 was not validly invoked by the mortgagee in the instant case, it might be said to follow that the Government has no right of redemption, because such a right is only given under Section 2410. But assuming that the section was not invoked, then the query is, does the United States have the right to redeem? That question need not be answered here, because certainly the amount tendered was wholly inadequate in any event.

■ If the Government's position is accepted, the effect is that it can redeem by paying approximately one-eighth of the amount of the mortgage debt. The Supreme Court had this very issue before it in the case of Collins v. Riggs, 14 Wall. 491, 81 U.S. 491, 20 L.Ed. 723, and its opinion quoted below should be sufficient answer that the amount necessary to be tendered in order to redeem property is the full amount of the mortgage debt.

"It is clear that the criterion by which the amount tendered was gauged was incorrect. To redeem property which has been sold under a mortgage for less than the mortgage debt, it is not sufficient to tender the amount of the sale. The whole mortgage debt must be tendered or paid into court. The party offering to redeem proceeds upon the hypothesis that, as to him, the mortgage has never been foreclosed and is still in existence. Therefore he can only lift it by paying it. The money will be subject to distribution between the mortgagee and the purchaser, in equitable proportions, so as to reimburse the latter his purchase-money and pay the former the balance of his debt."

See, also, American Loan & Trust Co. v. Atlanta Electric Ry. Co., C.C., 99 F. 313; and 37 Am.Jur. 837. It is therefore the conclusion of this court that no redemption by the Government has been accomplished in this case.

■ The point is now reached in this case and is squarely presented as to whether the subordinate Federal tax lien was cut off by the foreclosure of the purchase money mortgage pursuant to the law of Pennsylvania. This foreclosure under state law was accomplished exactly as was done in United States v. Cless. It should be repeated as was stated in that decision, that it is not necessary to join the subordinate lienors in a foreclosure action, nor to give them actual notice. However, as I view this decision, the precise question now under consideration has not been decided. An authoritative decision is desirable.

Federal tax liens and their relation to the foreclosure of mortgages have recently been the subject of several articles in legal publications. Divergent views are expressed and there is no unanimity of opinion and agreement as to whether Federal tax liens are divested by the foreclosure of prior mortgages. This court finds it is on the horns of a dilemma because of two authoritative decisions. The line of cases which accepts Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311, as authoritative, hold that the Government tax lien is not divested by the foreclosure of a prior first mortgage. The other line of authority is more recent and is typified by United States v. Boyd, 5 Cir., 246 F.2d 477, decided on June 28, 1957. The Boyd case holds that the foreclosure of mortgage under a power of sale extinguishes all liens subordinate of record to the mortgage and specifically in that case, an unpaid Federal tax lien.

In my opinion, the Metropolitan and Boyd decisions are irreconcilable. In making this decision, I must choose one or the other as the precedent. It seems to me that the Boyd case, in view of the Court of Appeals decision in the Cless case, presents the logical and reasonable answer to the problem in the instant case. Section 2410 not being mandatory, 26 U.S.C.A. § 6323(a) of the 1954 Internal Revenue Code should be given its full effect. It says:

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, * * * until notice thereof has been filed * * *."

Section 6321 of the Code gives the United States a lien against the property or rights to property of a person who neglects to pay a tax. Section 6323, however, protects the prior mortgagee. It seems to me that the Metropolitan decision detracts from and dilutes the effect of the recognition given to a mortgage by Section 6323. The logical and reasonable view of the situation appears to be that as set forth in the Boyd case, where the court said: [246 F.2d 483.]

"The result is that when a mortgage has been validly foreclosed by a non-judicial sale under a power, it is the consequence of such prior lien and the right of enforcement under it which destroys the junior encumbrance whether it be a private or Federal tax lien. The extinguishment or destruction of the junior lien comes from the nature of the superior lien and not from a later subsequent equity determination (whether under 28 U.S.C.A. § 2410, or Section 7403, or a 7424 proceeding) that this has been the effect of enforcement of the senior lien. Consequently, when the superior lien has been validly foreclosed, it cuts off all junior liens including those of the Government. Trust Company of Texas v. U. S., D.C.Tex., 3 F.Supp. 683; U. S. v. Ryan, D.C.Minn., 124 F.Supp. 1, 10; cf. Minnesota Mutual Life Ins. Co. v. U. S., D.C.Tex., 47 F.2d 942; Oden v. U. S., D.C.La., 33 F.2d 553."

In various articles and decisions on this subject, some of the writers make a

distinction or attempt to, as to the property right remaining in a mortgagor after the execution of the mortgage. In Pennsylvania this matter has been settled. See Brunn v. Wichser, 3 Cir., 75 F.2d 25, where Judge Woolley cites several Pennsylvania decisions, all to the effect that in Pennsylvania the general rule is that a mortgage is a lien only and not an estate; between the mortgagor and the mortgagee, title is in the mortgagee, but as to all other persons, the mortgagor is regarded as the owner and title is in him. The Government lien in the instant case thus fastened upon a title to real property.

In a recent decision of the Court of Appeals, Judge Biggs writing the opinion, United States v. Beaver, 3 Cir., 252 F.2d 486, reiterated the principle that priority to be awarded to United States tax liens is purely a Federal question. He also said, at page 489:

> " * * * Since the case of Rankin v. Scott, 1827, 12 Wheat. 177, 25 U.S. 177, 179, 6 L.Ed. 592, wherein Mr. Chief Justice Marshall enunciated the principle 'that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds,' the federal rule has been that 'the first in time is the first in right,' U. S. v. City of New Britain, 1954, 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 and this is true whether or not the property be after acquired. Glass City Bank of Jeanette, Pa. v. United States, 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed 56."

It is noticed that the Government sought certiorari to the Supreme in the Boyd case which was denied on December 11, 1957, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 188. In searching for authority for the Government's position, I secured and have examined the brief of the Solicitor General of the United States presented in his application for the writ of certiorari. The Solicitor General, it seems to this court, wrote a comprehensive and exhaustive brief on the subject under discussion. One of the cases he relied on is United States v. Kensington Shipyard & Drydock Corp., 3 Cir., 169 F.2d 9, but in that case it is to be noticed that the Government tax lien was the first prior lien on the property and the case is therefore distinguishable on the facts from the Boyd case. This court is aware of the rule that a denial of certiorari by the Supreme Court is not an adjudication of the issue presented to that court. But it does seem strange that if the Boyd case is not the law, considering the importance of the question and its relation to the collection of Federal taxes, that four of the Supreme Court justices should refuse certiorari. It seems to me, that to give full force and effect to that protection requires a further ruling that on foreclosure of such a mortgage the subordinate tax lien is divested. This carries to its logical conclusion the principles quoted by Judge Biggs in United States v. Beaver, " * * * that a prior lien gives a prior claim. * * " and that " * * * the first in time is the first in right."

Judgment will be directed for the defendants.