William Creighton, Mark H. Birch and Benjamin F. Bailey, trading as Creighton and Birch, *v.* The Scranton Lace Curtain Manufacturing Company.   Appeal of Stephen Chappell.

*Corporations—Directors—Pledge of goods.*

A pledge of the goods of a corporation for contemporaneous or future advances actually made upon the faith of them is valid, although one of the directors who voted for the pledge is a member of the firm to which the goods are pledged.

Whether after insolvency the corporation can change the pledge or its terms, to the disadvantage of other creditors, quære.

*Corporations—Judgment bond—Stockholders.*

Where a bond in a penal sum is given by an insolvent corporation to a

firm of which one of its directors is a member, conditioned that on default, judgment may be entered " for any sum or sums that may be due or owing to " the said firm, and the judgment entered therein includes certain of the company's notes for which the obligees were not liable at the time execution was issued, the judgment will be opened at the instance of a stockholder of the company.

*Corporations — Stockholders' standing to maintain corporate rights— Practice.*

Where a rule for an issue to determine the validity of a judgment entered against an insolvent corporation is issued at the instance of a stockholder, who has not shown affirmatively that he has standing to maintain the corporate rights, it will not be discharged until he has an opportunity to show his standing.

Argued Feb. 20, 1899. Appeal, No. 129, Jan. T., 1898, by Stephen Chappell, from order of C. P. Lackawanna Co., March T., 1897, No. 440, discharging a rule to open judgment. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, and DEAN, JJ. Reversed.

Rule to open judgment.

The bond on which judgment was entered was payable to the Lackawanna Trust and Safe Deposit Company, trustee, as security for such sums as might be owing to Creighton & Birch from time to time. Judgment was entered in favor of Creighton & Birch, but afterward the record was amended to make the plaintiff, " The Lackawanna Trust and Safe Deposit Company, trustee for William Creighton, Mark H. Birch and Benjamin F. Bailey, partners, doing business as Creighton & Birch."

ARCHBALD, P. J., filed the following opinion :

Much of the argument in behalf of this rule is answered by Mueller v. Fire Clay Co., 183 Pa. 450, and Cowan v. Plate Glass Co., 184 Pa. 1. The application is by R. A. Blythe and Alexander Nelson, attachment creditors, and Stephen Chappell, a stockholder, and the charge is that the judgment is a fraudulent preference secured by the plaintiffs by virtue of the fact that one of their number, Mr. Creighton, was a director of the defendant corporation, an insolvent and failing concern. Without stopping to consider the standing of the attaching creditors to contest the validity of the judgment in this way, we see nothing to question it. The legal principle invoked is

well established, but the facts do not bring the case within it. The Scranton Lace Manufacturing Company was incorporated in May, 1891, with an alleged capital of $260,000, subsequently increased within the year to $350,000 ; a large part of the original subscription—some $100,000—was for the benefit of an English concern which was at the bottom of the enterprise, as we understand, and whose subscription was to have been paid in machinery to be furnished. Owing to the difficulties and expenses connected with this the value of the machinery was ultimately fixed at about $60,000, or as stated in another place $80,000, and a settlement on that basis effected for it. From the start the concern does not seem to have been on a very stable financial footing, and when a change came from the tariff policy of the government in 1893, it was not able to stem the adverse tide. At least, that is what is alleged with regard to it. The plaintiffs, Creighton & Birch, were commission men in New York, dealing in lace curtains, and Mr. Creighton was one of the original stockholders and a director of the company. His firm, by reason of this, no doubt, became the sales agent of the company in the general market. In that capacity, by the condition of the company they were called upon to advance money from time to time, upon the consignments made to them. To secure them in these advances in August, 1895, it was agreed that curtains in course of manufacture and other property at the mill at Scranton should be set aside to them in pledge, and this was done. This course was pursued for about a year, large sums of money being loaned to the company on the strength of it, but sometime in July, 1896, they were advised by counsel that the goods so pledged, being left in the custody of the company, could be seized by any other creditor, and therefore afforded them no security whatever. This being brought to the attention of the directors, a resolution was passed July 27, 1896, authorizing a bond in the sum of $75,000, with warrant of attorney to confess judgment, to be given to the Lackawanna Trust and Safe Deposit Company, trustee, as security for such sums as might be owing to Creighton & Birch from time to time, and upon its execution the goods then held in pledge were released. This is the origin of the bond upon which judgment has been entered and there is nothing in any of it to call it in question. The plaintiffs had a right to pre-

scribe the terms on which they would part with their money, and solvent or insolvent, as the one party had the right to exact, so the other had the right to agree to it. The pressing needs of the company required that some one should so favor them, and had the directors been compelled to look to others less interested, it is doubtful if they would have been able to obtain as advantageous terms, or to stem the tide a fraction of the time that they did. This is all there is to the charge of a fraudulent preference. A preference there was, but it was a perfectly legitimate one, one which no one stockholder or creditor has the right to complain of.

All that remains is as to the form of the judgment and the amount for which it was entered. The bond was for $75,000, and was executed as we have seen to the Lackawanna Trust and Safe Deposit Company, as trustee for the benefit of Creighton & Birch. The judgment, as originally entered upon it, was in the name of the latter, they being the beneficial parties. It would perhaps have been a closer following of legal forms to have entered it in the name of the trustee to the use of Creighton & Birch, but if there was any error in this it was cured by the amendment subsequently allowed which was entirely proper: Clement v. Commonwealth, 95 Pa. 107.

Judgment was confessed for the penal sum named in the bond, execution being directed to issue for the real debt, which was fixed at $62,870.08. As to $54,329.76 there can be no serious controversy. It is satisfactorily shown that this sum was due the plaintiffs for advances made by them upon the strength of the security given them. A balance of their claim, amounting to $8,540.32, is made up of certain notes of the company held by third parties not then due. The evidence, however, is that the plaintiffs, at the instance of the company, assumed to pay their notes, and subsequently did so. It is true that this incidentally was in relief of Mr. Kemmerer, the president of the company, who was an indorser upon them, but he testifies that it was understood when he lent the credit of his name in this way, that he should be protected, and we see no reason why, upon the failure of the company, this understanding should not be carried out in the way it was, Creighton & Birch assuming to pay the notes and protecting themselves therein by means of the bond which they already had. So far as they are concerned it

was a further advance to the company in line with others which they had made, for which, if so agreed by the company, they could indemnify themselves as they did. The mere fact that the notes assumed were not yet due does not affect the question one way or the other. A failing debtor may protect as well against a contingent liability as against one already absolute : Braden v. O'Neil, 183 Pa. 462.

This fully justifies the plaintiff's claim in its entirety and there 's no occasion for disturbing it in any way. The judgment should be amended however so as to show that $75,000 is merely the penal sum and that the real debt for which the judgment is to stand is $62,670.08, as already stated. With this correction of the record the rule to open is discharged.

*Error assigned* was the order of the court.

*John G. Johnson*, with him *Vosburg & Dawson* and *Joseph P. McCullen*, for appellant.—Directors of an insolvent corporation who have claims against the company as creditors must share ratably with the other creditors in a distribution of the company's assets. They cannot secure to themselves any advantage or preference as directors for that purpose. These powers are held by them in trust for all the creditors, and cannot be used for their own benefit: Mueller v. Fire Clay Co., 183 Pa. 450; Cowan v. Plate Glass Co., 184 Pa. 1; Hopkins's App., 90 Pa. 69; Neal's App., 129 Pa. 64; Kersteter's App., 149 Pa. 148.

*Chas. H. Welles* and *James Torrey*, for appellees.—The failure to allege or prove that appellant was a stockholder is fatally defective, and he has no standing: South West Natural Gas Co. v. Fayette Fuel Gas Co., 145 Pa. 13.

It must appear affirmatively that no agent of the corporation is willing and able to act before a stockholder can intervene, and no such allegation or evidence is to be found in this case: Morawetz on Corporations, sec. 239.

Under the act of assembly of April 20, 1846, the " persons interested" who are entitled to an issue to try disputed facts are lien creditors only : Housekeeper's App., 49 Pa. 141; Moore v. Dunn & Fell, 147 Pa. 359; Dickerson's App., 7 Pa. 255.

The giving of the bond and warrant of attorney was not an

improper exercise of the power of the board of directors and officers of the company defendant: Cowan v. Plate Glass Co., 184 Pa. 1.

Insolvency as defined by the Supreme Court in a recent decision, is "insufficiency of assets when turned into money to discharge existing indebtedness:" Mueller v. Fire Clay Co., 183 Pa. 450; Finch Mfg. Co. v Stirling Co., 187 Pa. 596; Bowersox's App., 100 Pa. 434.

It was the clearly expressed will of the company defendant that Creighton & Birch should pay the three notes, and their bond used to secure them. The amount having been made up and agreed upon between Creighton & Birch and J. M. Kemmerer, president of the company defendant, and that agreement carried out by all the parties, it is perfectly valid and will be sustained: Commentaries on the Law of Corporations, Thompson, secs. 6494 and 6495; Uhler v. Maulfair, 23 Pa. 481; Lake Shore Banking Co. v. Fuller, 110 Pa. 156; Werner v. Zierfuss, 162 Pa. 360; Braden v. O'Neil, 183 Pa. 462; Finch Mfg. Co. v. Stirling Co., 187 Pa. 596; Cowan v. Plate Glass Co., 184 Pa. 1.

Where the judgment bonds of a corporation is given to certain of its directors, as a security to protect them on their indorsements for the company, and it is not made to appear that the company was insolvent at the time, or that at the time there was any collusion or actual fraudulent intent, the entry of judgment on the bond, after the insolvency of the company, will not warrant an injunction to restrain the sale or attachment of corporate property upon an execution issued thereon: Neal's Appeal, 129 Pa. 64.

That one holding a bond of indemnity may collect before the obligee is damnified does not admit of a doubt: Bank v. Douglass, 4 Watts, 95; Stroh v. Kimmel, 8 Watts, 157; Bamford v. Keefer, 68 Pa. 389.

OPINION BY MR. JUSTICE MITCHELL, May 1, 1899:

The weight of the evidence is that the Lace Company defendant was insolvent in July, 1896, when it gave the bond on which the judgment was entered, and such, as we read it, was the opinion of the court below. The company had previously received advances of money from plaintiffs, as security for which

it had pledged manufactured goods by delivery to the plaintiffs, and by setting apart for them in the custody of Taylor, its own assistant general manager.   In July, 1896, plaintiffs, becoming doubtful of the sufficiency of the security by the goods set apart in this manner, the board of directors passed the resolution under which the bond was given.   Creighton, one of the plaintiffs, was also a director in the company, and voted for giving the bond as a new security to his firm.   The pledge of the goods for contemporaneous or future advances actually made upon the faith of them was entirely lawful, notwithstanding the fact that Creighton was a director: Cowan v. Plate Glass Co., 184 Pa. 1: Finch · Mfg. Co. v. Stirling Co., 187 Pa. 596.   Whether the security agreed upon and taken at the time of such advances can subsequently, after insolvency, present or in contemplation, be exchanged for a new security more disadvantageous to the other creditors is not so clear, but we have not that question now directly before us.

The bond was for a penal sum, " as security for such sums as may be owing to Creighton & Birch from time to time," and the condition was that the Lace Company should pay such sums of money as should be owing or deliver such goods as the creditor should order, and in default judgment was. authorized to be entered " for any sum or sums that may be due or owing to the said Creighton & Birch," etc.   In February, 1897, judgment was entered on the bond for the penalty, and execution immediately issued for the full amount.   This, of itself, under the circumstances, was sufficient to put plaintiffs on explanation. The court subsequently directed the judgment to be amended so as to show that it was for the penalty, and ordered the real debt to stand as liquidated at $62,670.08.   This, however, did not help the case in the least.   No such sum was due or owing. The utmost that plaintiffs could bring forward as a present debt on the day the judgment was entered was $54,329.   The $8,000 difference was made up by including certain notes of the Lace Company on which one Kemmerer, the president of the company, was indorser, and which it was said that in some vague and not specified way the plaintiffs had " obligated " themselves to pay and thus relieve Kemmerer.   These notes were not in any possible view within the terms of the bond.   They were not advances or "sums due or owing " when execution was issued for

their amount, for they had not been paid, and the alleged " obligation " to pay them was not shown to rest on any consideration, or any circumstances that would justify the assumption of them as part of his preferred debt by a director with knowledge of the insolvency of his company, present or impending. It is true that a failing debtor may secure a bona fide creditor against a contingent liability, but it is enough in the present case, without regard to other objections, that the bond did not undertake to do so.

On the whole case it is clearly one of presumptive fraud and illegality. This prima facies may be rebutted, but it calls upon plaintiffs for explanation. The ascertainment of the exact facts which may show a special equity and the good faith of the transaction should go to a jury.

We have considered the case on the merits, because that was the course taken by the court below. But appellee has raised the question of appellant's standing, citing South West Natural Gas Co. v. Fayette Fuel Gas Co., 145 Pa. 13. The circumstances necessary to enable a stockholder to assume the maintenance of the corporate rights as declared in that case do not affirmatively appear here, but the case differs in the fact that the rule for an issue to determine the validity of the judgment as against other creditors was taken by an attaching creditor, as well as by the stockholder, and it does not appear that the latter has ever been called upon to show his standing. He is entitled to an opportunity to do so.

The order discharging the rule is reversed and the rule reinstated, with directions to award the issue prayed for, unless it shall appear that there is no party before the court entitled to ask for it.