SPRAGUE-BRIMMER MANUF'G Co. and others *v.* M. J. MURPHY FURNISHING GOODS Co. and others.[1]

*(Circuit Court, E. D. Missouri.   February 23, 1886.)*

1. CORPORATIONS — LIABILITY OF OFFICERS UNDER SECTION 744, REV. ST. MO.— DISSOLUTION—INSOLVENCY.

 Hopeless insolvency works the dissolution of a corporation, and under section 744, Rev. St. Mo., the president and directors of a corporation dissolved by insolvency are trustees of the corporation, and jointly and severally responsible for the misappropriation of assets.

2. SAME—FRAUDULENT CONFESSION OF JUDGMENT.

 Where corporate notes are indorsed by the president and directors of a corporation, and, after the corporation is dissolved by insolvency, they confess judgment in favor of the holders of such notes for the purpose of saving themselves from liability as indorsers, and the property of the corporation is levied upon and sold to satisfy such judgments, it amounts to a misapplication of assets.

3. SAME.

 In such cases the judgment creditor cannot be compelled to refund the money received, whether he is or is not a stockholder, and whether ignorant of the insolvency of the corporation or not.

In Equity. Creditors'. bill. Demurrers to bill.

This is a suit brought by certain creditors of the M. J. Murphy Furnishing Goods Company against said company and Jesse Arnot, Alfred Bradford, George H. Gill, the Continental Bank of St. Louis, the Importers' & Traders' National Bank, and the Fifth Avenue Bank of New York. The allegations of the bill, so far as they need be here stated, are substantially as follows, viz.:

That M. J. Murphy is the president and Jesse Arnot a director of, and George H. Gill a stockholder in, the M. J. Murphy Furnishing Goods Company; that Alfred Bradford is in fact the owner of a large amount of the capital stock of said company, and for many years was a director, and during the time he was a director commenced indorsing notes for the corporation for discount in the Continental Bank; that about March 1, 1885, he transferred his stock to his wife, and ceased to be a director, for the purpose of enabling himself to secure

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

a preference out of the assets of said company in the event of its final failure, which was then anticipated; that the notes upon which he was then liable as indorser were renewed from time to time until the notes were given, upon which judgment was afterwards confessed in favor of the Continental Bank; that Bradford is a son-in-law of Arnot, and exercised the same control over the corporation after the transfer of his stock as before, and that the transfer was only colorable; that Murphy, Arnot, and Bradford, after the hopeless insolvency of the corporation became manifest, confederated together to dispose of the assets of the company, so as to pay in full the notes indorsed by them, and leave the general creditors totally without payment; that in pursuance of this scheme judgments were confessed by the corporation in favor of the Continental Bank, Fifth Avenue Bank, and George H. Gill, holders of corporate paper indorsed as aforesaid, and the property of the corporation was levied upon and sold, and the proceeds applied to the satisfaction of such judgments; and that at the time judgment was so confessed in favor of said Gill he was aware of the company's insolvency.

The bill prays that the corporation be declared to have been insolvent before said judgments were confessed; that the funds and assets in the hands of defendants are true funds for the benefit of all the creditors; that Murphy and Arnot be removed from their position; and that all the defendants hereto be ordered and directed to turn over all assets of said corporation in their hands, including all funds received by them from the sale of said corporate property, to such trustees as the court may appoint to administer the trust. All the defendants except Mr. Murphy demur.

Section 744 of the Revised Statutes of Missouri is as follows:

"Upon the dissolution of any corporation, already created, or which may hereafter be created by the laws of this state, the president and directors or managers of said corporation, at the time of its dissolution, by whatever name they may be known in law, shall be trustees of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them; to sue for and recover such debts and property, by the name of the trustees of such corporation, describing it by its corporate name, and may be sued by the same; and such trustees shall be jointly and severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

*Mills & Flitcraft,* for complainants.
*Dyer, Lee & Ellis,* for the Continental Bank.
*Frank J. Donovan,* for Alfred Bradford.
*Fisher & Rowell,* for Jesse Arnot.
*John G. Chandler,* for George H. Gill.

TREAT, J., *(orally.)* Certain propositions have been argued in this case on demurrers as to the respective obligations of parties under the circumstances set forth in the bill, to-wit: The M. J. Murphy Furnishing Goods Company is one of those corporations tolerated by the laws of Missouri, whereby a man, in order to escape his obligations as a private individual, incorporates himself by bringing in just a

sufficient' number of others to comply numerically with the require-
ments of the statute, so that if the business is successful all will be
well; but if it is unsuccessful, those dealing with the concern may
have no remedies against the only real party who is transacting the
business. That class of corporations has been characterized by Broth-
ers MILLER, McCRARY, and BREWER very emphatically; but as long
as it is the law, every man who deals with such a corporation does so
with a full knowledge of the opportunities thereby presented to effect
a result which may be thought inequitable.

It appears in the case set forth in the bill that the M. J. Murphy
Furnishing Goods Company was such an incorporation. Mr. Mur-
phy's father-in-law was Jesse Arnot, and his brother-in-law, Mr. Brad-
ford. They became indorsers on the corporate paper. Mr. Gill held
some of the paper of the company on which Mr. Murphy himself was
indorser. Finding that the concern was, as alleged, "hopelessly in-
solvent," Mr. Murphy, the president of the company, proceeded to
the proper court, and confessed judgment in favor of certain banks
that held paper on which his father-in-law, brother-in-law, and him-
self were indorsers, and execution was ordered by him forthwith.
The property was sold, and, under the judicial proceedings in the
state court, the sheriff was ordered to distribute the proceeds *pro rata,*
which he did. Upon that condition of affairs, this bill is filed, by
creditors at large, requiring all these banks that held the paper having
indorsers thereon, which received *pro tanto* on their claims, to refund
the same, and also that the indorsers cause the same to be refunded
in order that an equal and *pro rata* distribution may be made.

Now, the first proposition which occurs to the court (but not ar-
gued) is this: If an indorser, not being a party to any fraud or fraud-
ulent scheme, being entirely ignorant of it, if there was such, finds
the paper on which he is indorser has been paid *pro tanto,* can he be
made liable for the fund or any portion thereof so paid? His liabil-
ity is only contingent. It is the duty of the maker to pay the debt.
Suppose, for instance, as in this case, one of the parties, the Conti-
nental Bank, was tendered, as part payment on a note of $10,000,
$6,000, and refused to accept it, what relationship would it occupy
to the indorser? Could it refuse to accept that part payment, and
hold the indorser for the whole amount? Those matters were not
presented.

Taking the allegations of the bill as true, which the court must do
on demurrers, it is evident that this is one of those peculiar corpora-
tions which, in law, exist under the statutes of the state of Missouri,
and the court has to treat it as the supreme court of the state treats
it. When the president and directors of a company know that the
corporation is hopelessly insolvent, and dispose of the assets not in
accordance with the statutes, as trustees, whereby every one could
*pro rata* share therein, each director becomes liable—in the language
of the statutes, "jointly and severally liable to the parties thereto"—

for misappropriated assets. But how as to those who have taken payment on demands justly due them? This court cannot order those to be refunded, and charge the whole amount back on the indorsers, who are only contingently liable, when the indorsers knew nothing about the transaction. That seems to be the theory of this bill, and it goes further than any case I can discover, and further than the ordinary rules of law permit. These parties who held the paper—this corporation being the maker—have a right to what they have received. They have nothing to do with the alleged fraudulent scheme. But the underlying thought of the bill seems to be that they should refund, and make the indorsers pay the whole of the obligations. It is a novel theory. If I am an indorser on a gentleman's paper, and the maker pays *pro tanto*, any of his schemes of fraud as to others is nothing to me. Suppose he paid it in entirety, whereby I am relieved as indorser. The primary obligation was the maker's obligation, and mine contingent; and I cannot understand how it is that I, as indorser, am held liable, not only for my indorsement, but for the payment by the maker of his obligation.

There are matters disclosed here which might justify comment upon the manner in which the state law permits such corporations to operate, but the law of the state controls. In this case there seems to have been a sort of family arrangement, by which parties should indorse each other, and then at last confess judgment for everything on which they were indorsers, and leave the creditors at large unpaid. It so happens that the president of the company, Mr. Murphy, has filed no demurrer. The condition of the case at this time is such that the bill stands as against him. Jesse Arnot, the father-in-law, was an indorser and at the same time a director, thus falling under the provisions of the statute. He is personally liable for all misappropriated assets. Mr. Bradford, the brother-in-law, was an indorser on some of this paper, and it appears, suggestively, paid the balance due out of his own pocket, but he was not a director. His wife was a stockholder. The stock, however, is all gone, of course. Mr. Gill was a stockholder, and Mr. Murphy was indorser on his paper, and it was a contrivance by which Murphy, a son-in-law, might run a concern, and leave the creditors without any means of compensation except from corporate assets. If a man is guilty of the folly of dealing with such a concern he must take the consequences.

The opinion of the court is simply this. The demurrer interposed by Mr. Gill, who held some of this paper indorsed by Murphy, is sustained. He is not bound to refund, as he knew nothing about any fraudulent device, but simply received about 60 per cent. of what was due him. Obviously, he is remitted to Murphy, as indorser, for the balance, who appears from the allegations here to be utterly insolvent, and that is Mr. Gill's loss. Mr. Bradford is an unfortunate indorser. About 60 per cent. was paid on his claim, and he has paid the balance. The Continental Bank held some of this paper, and re-

ceived only 60 per cent. *pro tanto*, and Mr. Bradford paid the other 40. Those three demurrers are sustained, viz., the demurrers of Gill, the Continental Bank, and Bradford. The demurrer of Jesse Arnot, the only one remaining, is overruled, because, under the corporate law of this state, as he chose to lend himself to this sort of arrangement, he has to take his liabilities, under the law, for a misappropriation of assets.

The supreme court of this state, and of a great many other states whose decisions I have examined, have reached this conclusion: that where like statutes prevail concerning dissolved corporations, the insolvency of the concern, known to the president and directors, works a practical dissolution, and they must take the statutory consequences, and that is the only safety there is in regard to this peculiar class of corporations under the Missouri law.