# Mechanics' Building and Savings Association No. 2's Assigned Estate.

*Building and loan associations—Purchase of real estate—Directors—Creditors—Stockholders—Redemption bonds.*

Where a building and loan association purchases real estate and gives its notes in payment therefor, and secures its notes by a mortgage, and the association and the stockholders receive the benefits of the transaction, and acquiesce in it for many years, subsequent creditors cannot object on the distribution of the proceeds of the sale of the purchased property after the insolvency of the association, that the mortgage was unauthorized, that the debt was unlawfully increased, that the corporate funds were tied up in a manner not consistent with the legitimate purposes of building associations, and that the contract was made with another corporation of which the directors of the association at the time composed the governing body.

The redemption bonds issued by one building association to another as-

sociation holding its stock and in cancelation thereof are legitimate evidence of debt against the association issuing them, and the payees in such obligation become mere creditors of the obligors therein.

Argued March 3, 1902. Appeals, Nos. 255 and 258, Jan. T., 1901, by William F. Shanaman and North West Building and Savings Association, from order of C. P. Berks Co., dismissing exceptions to auditor's report in the matter of Mechanics' Building and Savings Association No. 2. Before McCollum, C. J., Dean, Fell, Mestrezat and Potter, JJ. Affirmed.

Exceptions to report of Jefferson Snyder, Esq., auditor.

From the record it appeared that in 1895, the Mechanics' Building & Savings Association No. 2, purchased a building known as Keystone Hall, and gave certain notes in payment therefor. These notes were subsequently secured by a mortgage, the amount of which was $24,000, but should have been $12.000. Neither the purchase of the property, nor the giving of the notes, nor the creation of the mortgage was authorized by the stockholders. It also appeared that the officers and directors of the Keystone Building & Savings Association No. 2, the vendor, were substantially the same. as those of the Mechanics' Building & Savings Association No. 2.

In July, 1897, certain building associations which appeared on the books of the association as shareholders, made demands on the Mechanics' Building & Savings Association No. 2 for the amounts claimed to have been paid in by them, which resulted in an agreement between the committees appointed by the several associations to recommend the cancelation of the stock of the creditor associations and the taking in lieu thereof bonds of the debtor associations. The amount of the shares thus found due to other associations by the Mechanics' No. 2, was $11,619, and bonds to this amount were accordingly issued by the Mechanics' Association to the several other associations for the amounts of their several holdings, payable January 1, 1899, with interest at three per cent from December 1, 1897.

After the delivery of these bonds, the shares of stock of the several associations receiving them were canceled on the books of the Mechanics' Association.

The association subsequently became insolvent and on May 5, 1900, its assignee sold the Keystone Hall property, and

Jefferson Snyder, Esq., was appointed auditor to distribute the fund. In a lengthy report he decided that the holders of the notes were entitled to the payment of the balance due in full, and the balance should be distributed to the holders of the redemption bonds.

Exception, to the auditor's report were dismissed by the court in an opinion by ENDLICH, J., as follows:

The assignee of the Mechanics' Building & Savings Association No. 2, having filed his account, an auditor was appointed to pass upon exceptions filed to certain credits taken in the account and to make distribution of the balance that should be found to remain in the accountant's hands " to those legally entitled thereto." The sums for which the accountant had taken credit and the payment of which was excepted to as proper disbursements were treated by the auditor as still in his hands. Thus the question before the auditor was one of distribution among the various claimants upon the fund ; in the making of which distribution, he had power to investigate and adjust all existing equities among the parties before him : Ahl v. Rhoads, 84 Pa. 319, 327. The claimants were of three classes, viz: (1) the holders of notes of the assignor association given by it or for it for the loan of money wherewith in part the property was acquired from the sale of which the fund for distribution is derived, the payment of those notes being moreover attempted to be secured by an instrument dated February 24, 1897, and recorded June 4, 1898, which, if it is anything, is a mortgage; (2) the holders of so-called redemption bonds, i. e., bonds issued by the assignor association to other associations holding its stock and in cancelation thereof ; (3) stockholders. The auditor distributed to the class first named sufficient to cover their claims in full, and gave the balance of the fund (after deduction of expenses, etc.,) to the second class. Claimants belonging to the latter and to the third class have excepted to this decision—both, on the ground that no allowance ought to have been made to the note holders, or at least no preference given them ; and stockholders on the further ground that they ought to have been permitted to share in the fund pari passu with holders of redemption bonds. As giving peculiar significance to the exceptions concerning

the allowance to the note holders, the circumstances are relied on that certain of them were directors in the assignor association and also in the association from which the realty in question was purchased, and that, after purchasing the Keystone Hall, the principal part of that realty, at a stipulated price subject to a subsisting mortgage of $12,000, the stipulated payment was made and the conveyance of the property accepted although, in the meanwhile, an unauthorized mortgage for $24,000 had been substituted in lieu of the $12,000 mortgage.

## I. EXCEPTIONS OF REDEMPTION BONDHOLDERS.

There is hardly any room for doubt that the purchase of the property in question, at least so far as the Keystone Hall is concerned, was open to objection in a variety of particulars. Quite apart from the inexplicable blunder of accepting it subject to a mortgage of double the amount contemplated, it was a tying up of corporate funds inconsistent with the legitimate purposes of building associations (see Jarrett v. Cope, 68 Pa. 67), and therefore in excess of its lawful powers. It may have involved an indebtedness beyond the authority of the directors to create : art. 16, sec. 7, Const. 1874. And it was done by directors of one corporation contracting with another of which they at the same time composed the governing body: See Mercantile Library Hall Co. v. Pittsburg Library Assn., 173 Pa. 30, 41. But whatever liabilities were incurred and whatever rights accrued by reason of these considerations, they were liabilities incurred towards and rights accruing to the association and its stockholders. It is well understood that there is no relation between the creditors of a corporation and its directors, of which the law can take cognizance, and that the right of a creditor to have assets restored or compensation made for losses by directors is a purely equitable one (2 Morawetz, Corp. sec. 796), one which must be worked out mediately through the rights of the corporation. If, then, the corporation and its stockholders chose to relinquish or waive those rights, it cannot lie in the mouth of one who, years after, became a creditor of the company to insist upon them: Balliet v. Brown, 103 Pa. 546, 554. Let it be granted that the assignor association, because of the objections above indicated, might have disowned the purchase and avoided any indebtedness arising out of it,

while the previous situation of the parties might still be restored, it must be self-evident that a failure to do so, for a number of years, with knowledge or the means of acquiring knowledge of the true state of affairs, followed by an assignment of the property for benefit of creditors and its sale by the society's assignee, has determined any such right: See Manhattan Hardware Co. v. Phalen, 128 Pa. 110, 118. The parties can no longer be replaced in the situation they occupied before. The property has been treated by the society as its own. It has been sold and the proceeds of its sale have been received by the society's agent. It follows that the price of it must be an enforceable demand against the society, for no one can have both land and price: Jacoby v. McMahon, 174 Pa. 133, 136. The price of the land in this case is represented by the notes in dispute, which, as found by the learned auditor, are therefore to be regarded as valid demands against the assignor on the ground of its ratification of the transaction out of which they grew.

When this has been said, the contention that the holders of the notes ought to be excluded from the distribution is virtually disposed of. It is, to be sure, insisted that the acts of the directors were injurious to the association—involving it in loss and disaster; that they could be held in damages for the results of their doings; and that their claims now presented are, for that reason, subject to deduction or total rejection. Beyond the loss arising from the indefensible carelessness of the directors in paying for and accepting the Keystone Hall property incumbered by a mortgage of twice the amount stipulated, no evidence has been pointed out showing any specific amount of loss traceable to the action of the directors, or establishing that the society's insolvency was caused thereby; so that, aside from the matter referred to there is nothing whereby to determine what sums ought to be deducted from their claims. Concerning the specific loss from the overincumbrance, however, it appears that a portion of the excess of the mortgage above $12,000 was collected from the party responsible for the increase of the incumbrance and turned into the association's treasury by the directors, and that for the balance they, with the approval of the society's stockholders, accepted, for it, property which was, at the time, estimated to be equal in value to

the amount of said balance, but from which eventually the society realized less. In these circumstances, it is difficult to see how the society or its stockholders can have retained a right to compel the directors to make up the deficit, or how creditors of the association can ask to have the amount of it deducted from the notes in question. But even apart from these considerations, it is to be observed that the liability sought to be fastened upon the directors by the exceptants is not one predicated upon actual fraud, as in Kisterbock's App., 51 Pa. 483, but upon constructive fraud, technical tort, which, according to Ahl v. Rhoads, 84 Pa. 319, cannot be used for the purpose here attempted to be accomplished.

The next inquiry, concerning the propriety of the auditor's decision in preferring the claims of the note holders, is thus to be approached upon the footing, that, for aught the exceptants can allege, those notes were valid claims against the society, representing the price still due by it for the very property by the sale of which the fund for distribution has been raised. The learned auditor declared a preference in their favor on the ground of the mortgage of February 24, 1897. The established rule is that a director of a corporation may advance money to it, and may take from it a mortgage or other security like any ordinary creditor (3 Thomp. Corp. sec. 4066), but that when the corporation has become insolvent, he cannot thus secure himself for past advances: 5 Thomp. Corp., sec. 6503; Sicardi v. Keystone Oil Co., 149 Pa. 148—"insolvency" in this connection meaning an insufficiency of assets, if turned into money at the time, to discharge the then existing indebtedness: Mueller v. Monongahela Fire Clay Co., 183 Pa. 450, 456. Where such a condition of affairs at the time of the taking of the security is not proven and it appears that the transaction in which the indebtedness was created for which the directors became liable and the security was given did not personally benefit them, the preference resulting therefrom will, it seems, stand as valid: Mueller v. Monongahela Fire Clay Co., 183 Pa. 450, 465. I discover in the report of the auditor no requests to find, no finding, and no exception to his failure to find that the assignor association was insolvent, or that its directors knew it to be on the eve of insolvency when the mortgage of February 24, 1897, was given. The preceding and succeeding financial statements

do not indicate that it was so considered.   The mere fact that assets appraised in 1896 and 1897 at so much sold, some years later, for very much less, is not necessarily or alone evidence of insolvency in 1897 : Mueller v. Monongahela Fire Clay Co., supra, p. 457.

For these reasons, as well as others convincingly stated by the learned auditor, there seems to be nothing in the exceptions filed on behalf of the North West Building & Savings Association and of William F. Shanaman, requiring reversal or modification of the distribution as reported.

## II. EXCEPTIONS OF STOCKHOLDERS.

In number and character these exceptions are such as to suggest as pertinent to this record the observation made in Howison v. Alabama Coal & Iron Co., 30 U. S. App. 473, 497. What has been said in discussing the exceptions of the redemption bondholders really disposes of all the exceptions filed on behalf of the stockholders, except those which are based on the theory that these two sets of claimants ought to be treated as on the same footing.   If the holders of the redemption bonds are to be regarded as mere creditors of the association, it is clear that they are to be paid ahead of claims of stockholders as such : Criswell's App., 100 Pa. 488 ; Christian's App., 102 Pa. 184 ; National Savings, etc., Assn.'s Assigned Estate, 9 W. N. C. 79.   Now, it was held by this court in North West B. & S. Assn. v. Columbia B. & S. Assn., No. 59, January term, 1900, that the redemption bonds issued by various building associations to one another in pursuance of a general scheme were valid, binding and suable obligations based upon compromise and settlement of rights and liabilities arising from stockholdings surrendered and canceled.   Necessarily the payees in these obligations became mere creditors of the obligors therein.   To hold anything different would be to arbitrarily set aside contracts validly entered into, whereby the situation of the parties was materially altered, subsisting rights relinquished and a new relation created.

And now, June 29, 1901, the exceptions filed to the report of the auditor are dismissed, and said report is confirmed absolutely.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Isaac Heister,* for North West Building & Savings Association, and *Cyrus G. Derr,* for William F. Shanaman, cited: Kennett Electric Light Co. v. Kennett Square Borough, 4 Pa. Dist. Rep. 707; Milford Borough v. Milford Water Co., 124 Pa. 610; Mercantile Library Hall Co. v. Pittsburg Library Assn., 173 Pa. 30.

*D. N. Schaeffer* and *C. H. Ruhl,* for appellee, cited: Maple v. Kussart, 53 Pa. 352; Adlum v. Yard, 1 Rawle, 171; Jacoby v. McMahon, 174 Pa. 135; Fredericks v. Penna. Canal Co., 109 Pa. 55.

PER CURIAM, May 19, 1902:

The report of the auditor confirmed by a well considered opinion of the court below needs no revision; the assignments of error are therefore overruled and the decree of the court below is affirmed.