# Pangburn *v.* American Vault, Safe & Lock Company (No. 1).

*Corporation—Directors—Confession of judgment to directors—Security for antecedent debt—Priority.*

Directors of an insolvent corporation, who have claims against the company as creditors, must share ratably with other creditors in the distribution of the company's assets. They cannot secure to themselves any advantage or preference over other creditors by using their power as directors to that purpose. Their powers are held by them in trust for all the creditors and cannot be used for their own benefit.

The directors of a solvent corporation who advance money for the purpose of paying an obligation of the company, without any understanding or agreement that they are to be protected, cannot subsequently, when the company is insolvent, and they have knowledge of the insolvency, take a judgment note from the company for the advances previously made by them, and thus secure priority over general creditors.

Argued, Oct. 30, 1902. Appeal, No. 103, Oct. T., 1902, by

Lewis McMullen, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1894, No. 52, on bill in equity in case of E. H. Pangburn, E. E. Pangburn and C. L. Elliott, trading as Elizabeth Planing Mill Company, v. American Vault, Safe & Lock Company. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.   Affirmed.

Bill in equity for a receiver.

The auditor, R. C. Rankin, Esq., appointed to pass upon the account of the receiver, reported, inter alia, as follows:

There is some controversy concerning a number of claims presented, such will appear in the schedule immediately after the list of wage claims and in the order here considered.

1. Lewis McMullen, Trustee, v. American Vault, Safe & Lock Company, D. S. B. No. 150, December term, 1893, $8,568.30, on which has been paid $640.   Upon this judgment, the entire fund for distribution, as shown by the account, is claimed.

At a meeting of the board of directors held on June 12, 1893, a resolution was adopted authorizing the execution of a judgment note to cover the claim of S. O. Rhodes, P. T. B. Shaffer, T. W. Martin, B. W. Applegate, C. H. Underwood, C. F. Sheriff and Josiah Speer, directors of defendant company, for money theretofore raised by them to pay a note of the company, originally $10,000, then reduced to $8,000.   A fi. fa. was issued thereon at No. 150, December term, 1893, on October 10, 1893, and that writ is still in the sheriff's hands.   Testimony was offered by exceptants as to the validity of this judgment.   Counsel for the receiver maintain that the auditor has not power to go into the question.   The cestui que trustent under the judgment were the directors and officers of defendant company; Josiah Speer, secretary and general manager, now receiver, was one of them.   In view of the facts that assets of very considerable value have been lost under the receiver's management of his trust and it is sought to have what little is left appropriated to a judgment in which he, as well as all the other directors, is interested, your auditor considers that under the authority of Wenger's Estate, 2 Pa. Superior Ct.

611, and Wright's Estate, 182 Pa. 90, he was justified in hearing the testimony and finding the facts.

On June 12, 1893, a resolution of the board of directors was passed authorizing the proper officers of the company to execute a judgment note to Lewis McMullen, trustee, in an amount sufficient to protect the officers of the company on their indorsement of a certain note in the Central Bank for $8,000.

Josiah Speer says: "I was in charge, and also being an interested party on that indorsement my recollection is that I was told to watch the condition of the company, and if it was able to take care of its paper itself there would be no necessity of entering a judgment; while the board had directed it to be given, yet there was no specified time; when I felt that there was danger I notified the board and called them together, and they directed then that the note be made in favor of Lewis McMullen, trustee." At a directors' meeting of September 4, 1893, a resolution was adopted directing the secretary to place in the hands of Lewis McMullen a judgment note for $8,000, for use of indorsers on the Central Bank note for that amount; the note is dated June 13, 1893; it does not appear, other than from the above testimony, when it was actually drawn.

Under the authorities officers who have the power to protect themselves and have exercised it, must show that the contract was fair under all circumstances. In Mueller v. Fire Clay Co., 183 Pa. 450, the court says, "Even if the judgment was entered after insolvency was known, yet the contract having been made before insolvency, as an indemnity to the directors for individual indorsements, such judgment could be enforced as a lien against the corporate property, as in Meal's Appeal," 129 Pa. 64.

The directors had borrowed $10,000 on the promissory note of the company indorsed by them, in August or September, 1892, from the Central Bank of Pittsburg. On the date this preference was authorized there was $8,000 still due on that note.

The question then is, were the defendant company's affairs in such condition when the judgment was authorized to be confessed that such action could be taken by the directors without prejudice to the rights of other creditors?

| | |
|---|---|
| Take for example second inventory of assets hereinbefore set out, amounting to . | $126,813.01 |
| The manager, Josiah Speer, in his answer to the bill for receiver puts the total liabilities at . . . . . . . . | 52,410.65 |
| There were issued 911 shares of the par value of $50 of preferred stock . . . | 45,550.00 |
| 1,780 shares of common stock . . . | 88,950.00 |
| Total liabilities then were . . . | $186, 910.65 |
| Showing liabilities in excess of assets of | $ 60,197.64 |

At the same meeting at which the judgment note was authorized to be given by the officers, June 12, 1893, the minutes say "the General Manager reported that he had been unable to discount any paper last week, and being without funds could not pay the hands on Saturday last. That the concern is in rather an embarrassing condition, the Chicago Branch being slow in making remittances."

The following motion was adopted:

"Whereas, The Chicago Branch of this company has proven an unfailing source of loss to this company, and we find it beyond our ability to render it profitable, therefore be it,

"Resolved: That Josiah Speer be and is hereby directed to proceed to Chicago at once and discontinue said branch."

Then follows some instructions in detail.

The judgment note authorized at that meeting seems never to have been given, for on September 4, 1893, the directors adopted substantially the same resolution, after having first heard the report of a committee that "it had been unable to procure a loan or assignments of contracts." "The General Manager reported he had not written to creditors yet asking for an extension of time on our accounts, for the reason he had on hand a likely sale of a block of capital stock. The parties are to be up on Tuesday afternoon train." Then a claim due from the United States government was assigned to S. W. Applegate to repay him for $500, he had paid on the company's note in the Central Bank. Then the following resolution was passed, viz:

"Whereas, This company having become involved in an in-

debtedness, being balance for construction ror material and labor, together with interest on its bonded indebtedness, amount to the sum of over $26,000, and our resources do not seem to be sufficient to pay the same at once, and some of our creditors pushing for judgment; therefore be it,

" Resolved: That this company joins with our creditors wishing a receiver appointed, to take charge of its affairs, and ask the court to appoint some person competent to act as receiver until such time as it can do business without embarrassment and complete the contracts now on hand, and pay its accounts. This course seeming best in the interest of all creditors and stockholders."

But going back of the question of the financial standing of defendant company at the date the resolutions just quoted were passed, we find from the minutes and oral testimony that the company was organized with a capital stock of $4,000. On July 14, 1891, a directors' meeting called a stockholders' meeting on July 15, 1891, at which the increase of the capital stock to $200,000 was authorized, on the same day a directors' meeting provided for the issuing of $50,000 preferred stock and a stockholders' meeting voted in favor of such issue. On August 17, 1891, at a stockholders' meeting the minutes of the last mentioned action were approved and the number of directors increased from three to seven. The minutes of a directors' meeting of August 18, 1891, and a stockholders' meeting on September 10, 1891, show the creation of a bonded indebtedness of $25,000.

The stockholders' met on August 20, 1901, and entered into an agreement on, the part of the company with E. W. Neff and C. H. Underwood to purchase the assets of the Chicago Safe & Lock Company from them at $130,000, payable $30,000 cash, $25,000 in notes or bonds, and $75,000 in stock of the company, the stock to be issued to Neff & Underwood and the cash, notes or bonds to be paid to the Chicago Safe & Lock Company. Neff and Underwood at that date had an option to purchase said effects at the price of $25,000. At a special board meeting of October 31, 1891, J. R. Wiley, the treasurer, stated that he could not conscientiously countersign the stock certificates authorized by the board to be issued to Neff & Underwood, and he resigned his position. On motion

of Martin, seconded by Applegate, the resignation was accepted and R. T. Wiley was elected in his place. The receiver was requested to produce an inventory of the assets of the Chicago Safe & Lock Company which he did not do.

A directors' meeting of December 7, 1891, provided for calling a meeting of the stockholders on December 19, 1891, "to devise some plan to relieve the company from its embarrassment occasioned by the failure of the Blaine Land and Improvement Company to complete our factory buildings."

On August 25, 1891, a resolution was passed by the board under which I. C. Tuttle loaned to T. W. Martin and Applegate for the defendant company $2,500, upon condition of receiving therefor a bonus of $500 of the stock of Underwood, Tuttle agreeing to subscribe for $500 of the company's stock, the company paying him a bonus therefor of $150 cash, provided further that $1,000 of said stock be preferred stock.

The minutes further show that on January 22, 1892, the company confessed a judgment to Martin & Applegate, to secure them in having procured this loan in the sum of $2,000, the amount then unpaid.

The minutes of January 16, 1892, show action by the board for the sale of $50,000 of the stock of the company at figures netting the company seventy-five cents on each dollar of stock sold.

On July 17, 1893, the minutes show that the company was indebted to Josiah Speer in a considerable sum, and being unable to pay any part of it in cash, it was paid by Speer's taking from the company six safes at nineteen per cent of the list price.

The minutes of a stockholders' meeting on July 25, 1893, show liabilities of the company at that date beyond the bonded indebtedness, of $22,632.05, and on the same day the directors took action on the sale of the entire stock of the Chicago branch, including rented safes, to Mrs. M. A. Bigford at twenty-two and one half per cent of list price.

Mr. Speer says in his testimony that the company received $58,000 to $63,000, he thinks, in cash from the sale of stock and that it sold at par.

Rose, Shaffer, Applegate and Speer being present, a resolution was passed recommending to the stockholders' meeting the sale of stock for fifty cents on the dollar.

Your auditor, therefore, finds, that at the dates of the authorization of the judgment note, June 12, 1893, and September 4, 1893, the defendant company was insolvent, that the directors for whose benefit the judgment was confessed did not indorse the company's paper upon an agreement that they should be secured by such note, that the execution issued upon the judgment two days before the appointment of the receiver has not been returned, and as a matter of law that the trustee for the directors is not entitled to his claim in full, to the prejudice of the rights of other creditors, but shall receive his pro rata dividend of the funds for distribution and further that the receiver be surcharged with $730.12, the sum he paid the trustee on account of said judgment.

Exceptions to auditor's report were dismissed by the court.

*Error assigned* was in dismissing exceptions to auditor's report.

*John F. Cox*, for appellant.—The manufacturing corporation whose directors and treasurer know it to be heavily in debt, but do not believe it to be insolvent, may confess a judgment to its treasurer for borrowed money which was absolutely necessary to pay the wages and freight bills, and without which the works of the company would have been closed : Cowan v. Penna. Plate Glass Company, 184 Pa. 1.

*J. H. Beal*, with him *O. P. Robertson, J. P. Patterson, H. L. Goehring, J. H. Reed, George E. Shaw* and *Edwin W. Smith*, for appellees.—The directors were not entitled to a preference : Mueller v. Fire Clay Co., 183 Pa. 450; Moller v. Fibre Co., 187 Pa. 553.

Opinion by Mr. Justice Mestrezat, January 5, 1903:

The principal and important question in this appeal is raised by the second assignment of error wherein the appellant complains that the auditor and court below erred in finding that his judgment was not a preferred claim and was not entitled to preference in the distribution of the fund in the hands of the receiver. The position of the appellant is stated in the assignment as follows : "The claim of the exceptant having been re-

duced to a judgment before the appointment of a receiver, and being a lien upon the real estate and part of the fund in the hands of the receiver being the proceeds of the sale of real estate upon which exceptant's judgment was a first lien, the said judgment was entitled to be paid in full out of said fund; and an execution having been issued and in the hands of the sheriff, and in force prior to the appointment of a receiver, and proceedings thereon being only suspended by order of the court appointing the receiver, was not, therefore, affected by said appointment, and became a first lien upon the said personal property." The facts bearing upon this claim as found by the auditor may be briefly stated.

The American Vault, Safe & Lock Company was incorporated in 1891 and engaged in the manufacture and sale of vaults and safes in Allegheny county. In August or September, 1892, the directors of the company borrowed $10,000 of the Central Bank of Pittsburg on a note of the company indorsed by them. The amount of the note was subsequently reduced to $8,000. On a bill filed by an unsecured creditor the court, on October 11, 1893, appointed Josiah Speer, receiver, reciting in the order that "upon consideration of said bill and answer (of defendant company) the court find that the defendant company is in an insolvent condition." The receiver took possession of the property, real and personal, and continued to operate the plant until September 24, 1894, when, under an order of court, he sold it at public sale. The proceeds of this sale are in court for distribution and Lewis McMullen, trustee, the appellant, claims that his judgment given to secure the directors for the indorsement of the company's note should be paid in full out of the fund. The board of directors adopted a resolution on June 12, 1893, authorizing the execution of a judgment note to cover the claim of S. O. Rhodes, P. T. B. Shaffer, T. W. Martin, B. W. Applegate, C. H. Underwood, C. F. Sheriff and Josiah Speer, directors of the company, for money theretofore raised by them to pay a note of the company. At a directors' meeting on September 4, 1893, the secretary of the company was directed to place in the hands of Mr. McMullen a judgment note for $8,000 for the use of the indorsers on a note of the Central Bank for that amount. Pursuant to the action of the board of directors the judgment note, the subject of this con-

troversy, was given to the trustee.   Judgment was entered on
the note on October 9, 1893, and a fi. fa. was issued thereon
October 10, 1893.   The auditor found, and no exception was
taken thereto, "that at the dates of the authorization of the
judgment note, June 12, 1893, and September 4, 1893, the de-
fendant company was insolvent; that the directors for whose
benefit the judgment was confessed did not indorse the com-
pany's paper upon an agreement that they should be secured
by such note, and that the execution issued upon the judgment
two days before the appointment of the receiver has not been
returned."

The facts found by the learned auditor are clearly deducible
from the evidence.   It is equally apparent from the testimony
that at the time the judgment note was authorized to be exe-
cuted, the directors knew the insolvent condition of the cor-
poration.   The auditor and court below were, therefore, right
in holding that the appellant was not entitled to have his claim
paid in full out of the fund for distribution.   There is no
equity in the claim of the appellant that would sustain a con-
trary conclusion on the facts disclosed by the evidence.   The
indorsement of the company's paper was made by the directors
in 1892.   They were not induced to assume this liability by
reason of any misunderstanding or agreement that they should
be protected by the company.   The company at that time was
presumably solvent and fully able to meet its obligations.
The credit of the directors was not used to assist it in an
emergency nor to protect the corporate property from sacrifice.
Several months after they became indorsers to the Central
Bank, the directors undertook to secure themselves against
the liability they had incurred the previous year, and by res-
olution authorized the execution of the judgment note upon
which they claim a preference here.   In the meantime condi-
tions had changed and the corporation had become hopelessly
insolvent.   After this was known to the directors they directed
the secretary of the company to deliver the note to their
trustee.   One of the directors, who was also the receiver,
gives the circumstances under which the note was made and
clearly discloses the unfairness of the transaction.   He tes-
tifies : "I was in charge, and also being an interested party on
that indorsement my recollection is that I was told to watch

the condition of the company, and if it was able to take care of its paper itself there would be no necessity of entering a judgment; while the board had directed it to be given, yet there was no specified time; when I felt there was danger, I notified the board and called them together, and they directed then that the note be made in favor of Lewis McMullen, trustee." At the meeting of the directors on September 4, 1893, when they authorized the making of the note, they resolved to join with other creditors in having a receiver appointed for the company. Two days prior to the appointment of the receiver, a judgment was entered on the note and an execution issued thereon. This conduct of the directors was a clear violation of their official duties and could secure for them as individuals no preference over other creditors of the company. Their action was not taken for the benefit of the company but solely to give themselves a preference in the distribution of its assets. The burden was upon them to show that the preference was in all respects fair and conscionable and that it was not collusive for the mere purpose of preference: Cowan v. Penna. Plate Glass Co., 184 Pa. 1. This they have failed to do. They are, therefore, within the well settled rule forbidding a preference which is recognized in the decisions of this court and stated in Morawetz on Corporations, sec. 787, as follows: " Directors of an insolvent corporation, who have claims against the company as creditors, must share ratably with other creditors in the distribution of the company's assets. They cannot secure to themselves any advantage or preference over other creditors by using their power as directors to that purpose. Their powers are held by them in trust for all the creditors and cannot be used for their own benefit."

The first assignment is based on a misapprehension of the facts. The wage claims were not allowed a preference out of the fund produced by the sale of the real estate, as the appellant claims, but as distinctly stated by the auditor they were held to be a lien and payable out of the proceeds of the personalty with which the auditor surcharged the receiver.

The other assignments need no special consideration. The claims which are the subject of these assignments were prop-

erly allowed to participate in the distribution of the fund in the hands of the receiver.

The assignments of error are dismissed and the decree is affirmed.