ASHEVILLE LUMBER CO. v. HYDE.

(Circuit Court, M. D. Pennsylvania.  September 13, 1909.)

No. 227, June Term, 1907.

1. CORPORATIONS (§ 545*)—OFFICERS—WRONGFUL USE OF CORPORATE FUNDS—
   OBTAINING PREFERENCE AS CREDITOR.

   An officer of an insolvent corporation, who has claims against it or is
   bound on its obligations, must share ratably with other creditors, and can-
   not secure to himself any advantage or preference over them by using
   his power as an officer to pay his claims, or those on which he is liable,
   when it is evident that other creditors cannot be paid in full and that the
   corporation cannot continue its business.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175;
   Dec. Dig. § 545.*]

2. CORPORATIONS· (§ 545*)—OFFICERS—LIABILITY TO CREDITORS FOR MISAPPLI-
   CATION OF FUNDS.

   Defendant, who was treasurer and general manager·of a corporation,
   after it had become hopelessly insolvent, used all of its available funds
   to pay certain notes on which he and other directors were indorsers, and
   in payment of his back salary and temporary advances which he had
   made in cash shortly before to meet demands on the company.  *Held*, in
   an action to recover, for the benefit of general creditors of the company,
   the sums so paid out, that defendant was liable for the sums he had so
   unlawfully applied on claims which were not entitled to preference, and
   that it was no defense that other directors, who were also indorsers, were
   released by such payment, but that he was entitled to his salary and the
   sum taken in repayment of cash advances made.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175;
   Dec. Dig. § 545.*]

3. CORPORATIONS (§ 548*)—LIABILITY OF OFFICERS TO CREDITORS—SUIT TO EN-
   FORCE.

   The fact that a creditor of a corporation, while it was insolvent and
   a short time before it ceased doing business, received payments on his
   debt which gave him a preference over some of the other creditors, does
   not deprive him of the right to maintain a suit in behalf of himself and
   all other creditors against an officer of the corporation to recover sums
   illegally used by such officer in paying other debts on which he was per-
   sonally liable.

   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 548.*]

In Equity.  On final hearing.

Grant Herring, for plaintiffs.
Harry S. Knight, for defendant.

ARCHBALD, District Judge.   This is a bill brought by certain cred-
itors of the Bloomsburg Lumber & Manufacturing Company, on behalf
of themselves and others, to charge the defendant with money of the
company paid out by him as treasurer, in fraud, as it is said, of their
rights.   The Bloomsburg Lumber & Manufacturing Company was in-
corporated under the laws of Pennsylvania, somewhere about Janu-
ary 1, 1904, to conduct a lumber and planing mill business, with a
capital of $41,000, of which $16,000 was paid in, in cash; the balance
being represented by real estate put in at $25,000.   The money paid

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in was exhausted in the purchase of machinery and material, and with-in four or five months, in consequence, the company was compelled to borrow $10,000 for working capital, which was secured at different banks on notes indorsed by the defendant and two other directors. The defendant was treasurer of the company from the start, and on May 1, 1906, was made general manager, and given full charge. The business was a losing one from the beginning, running $4,000 behind the first year, and $6,000 the second; and on January 15, 1906, when an account seems to have been taken, the indebtedness amounted to $33,-000, which was increased by July to $43,000, at which time the banks, not being satisfied with the outlook, gave notice that the loans which they were carrying must be paid. On August 20, the accustomed pay day, the company was not able to meet its July pay roll, and some 10 days later a bill was filed against it in the common pleas of the county upon which the defendant was appointed receiver. Meantime the defendant, as treasurer, had been collecting in and realizing upon the available assets of the company, getting together in this way some $10,000, which he used, to take care of the notes at bank, on which he and the other directors were indorsers, and also to pay himself for salary and advancements, all of which he did on his own responsibility and without consultation with the other directors. The payments so made were as follows:

| | | | |
|---|---|---|---|
| August 18. | 10 months' salary | ......................................... | $1,000 |
| " | 20. | First National Bank of Catawissa....................... | 1,000 |
| " | 24. | First National Bank of Bloomsburg...................... | 4,000 |
| " | 26. | First National Bank of Berwick......................... | 2,500 |
| " | 28. | Money advanced by defendant personally................ | 515 |
| " | 30. | Farmers' National Bank of Catawissa................... | 1,000 |
| | | Total............................................... | $10,015 |

This drained the treasury of every dollar, and the day after the last payment the bill for the appointment of a receiver was filed. It is to recover for the benefit of creditors generally the money so paid out that the present suit was instituted. The contention is that, the company being hopelessly insolvent, the defendant had no right to take advantage of his position, as general manager and treasurer, to prefer himself and pay off the indebtedness due to him individually and the obligations for which he and the other directors were liable, and that, having done so, it was a breach of trust and a constructive fraud, for which he is answerable to creditors.

The doctrine which is thus invoked, while not of universal acceptance, is the better, if not the prevailing, rule. 7 Am. & Eng. Encyc. Law (2d Ed.) 743, 744; 10 Cyc. 1255; Morawetz, Corp. § 787; Thomp. Corp. §§ 6503, 6504. It is that of the Pennsylvania and the federal courts, and is therefore controlling here. It was expressly held in Hopkins' Appeal, 90 Pa. 69, that where the officers of an insolvent corporation, to whom it was indebted, took notes and got judgment by default in their own favor, on which execution was issued and the property of the company sold, it was a fraud in law, which gave them no preference over other creditors in the distribution of the proceeds, which should therefore go equally to all. And in Kerstetter's Appeal,

149 Pa. 148, 24 Atl. 163, a similar decision was made; the rule, as laid down in Morawetz on Corporations, § 787, that the directors of an insolvent corporation who have claims against it must share ratably with other creditors, and cannot secure to themselves any advantage or preference over them, by using their power as directors, being expressly approved. "If on the discovery of the insolvency of the corporation," it is said, "its officers were at liberty to appropriate its entire assets in satisfaction of their demands against it, outside parties dealing with it would be utterly devoid of protection. The law does not intend or allow such an appropriation, by persons intrusted with the management of the corporation." And Mechanics' Building Association's Estate, 202 Pa. 589, 52 Atl. 58, and Pangburn v. American Vault Co., 205 Pa. 83, 54 Atl. 504, are to the same effect. "The established rule," as it is said, in the former, "is that a director of a corporation may advance money to it, and may take from it a mortgage or other security, like any ordinary creditor, * * * but that when the corporation has become insolvent he cannot thus secure himself for past advances."

There is nothing to call this in question in Mueller v. Fire Clay Company, 183 Pa. 450, 38 Atl. 1009; it being found in that case that, at the date of the judgment confessed to secure the notes on which the directors were indorsers, the company was solvent, and that the judgment was not given to prefer the directors, but in order to satisfy the demands of the banks, and as a condition to the extension of existing loans, which was essential to the continuance of the company's business, and not with the idea of stopping it. The rule that the directors of an insolvent corporation may not take advantage of their position to the detriment of other creditors, as declared in previous cases, was at the same time in terms approved; such action, as it is said, being constructively fraudulent, and the burden being on the officers preferred to show that it was fair and conscionable. And the case of Cowan v. Plate Glass Co., 184 Pa. 1, 38 Atl. 1075, is no different.

The same rule prevails in the federal courts, of which one or two examples will be sufficient. Thus, in Koehler v. Iron Company, 2 Black (U. S.) 715, 17 L. Ed. 339, it was held that a mortgage executed by the officers of a corporation in failing circumstances to secure an existing indebtedness due to themselves, in abuse of their authority, was not enforceable. "Directors cannot thus deal with the important interests intrusted to their management," as it is said. "They hold a place of trust, and by accepting the trust are obliged to execute it with fidelity, not for their own benefit, but for the common benefit of the stockholders of the corporation." So where, in Drury v. Cross, 7 Wall. 299, 19 L. Ed. 40, the directors of an insolvent railroad, who had indorsed its notes, which were secured by its bonds, procured a foreclosure of the trust mortgage and a sale of the road, with its equipment, which they assisted the purchaser to acquire for an inconsiderable sum, the transaction was held to be tainted with such fraud as made the purchaser liable to creditors of the company for the value of the property obtained. "The conduct of the directors of this railroad corporation," says the court, "was very discreditable, and without authority of law. It was their duty to administer the important matters committed to their charge for the mutual benefit of all parties interest-

ed, and in securing an advantage to themselves, not common to the other creditors, they were guilty of a clear breach of trust. To be relieved from their indorsements, they were willing to sacrifice the whole property of the road. Bound to execute the respective duties intrusted to their management with absolute fidelity to both creditors and stockholders, they nevertheless acted with reckless disregard of the rights of creditors as meritorious as those whose paper they had indorsed."

This, no doubt, was an extreme case, but the same principle was involved. It has also been asserted in numerous cases in the lower federal courts, of which a few only need be named. Lippincott v. Shaw Carriage Company (C. C.) 25 Fed. 577; Sprague Brimmer Manufacturing Co. v. Murphy Furnishing Goods Co. (C. C.) 26 Fed. 572; White Manufacturing Co. v. Pettes Co. (C. C.) 30 Fed. 865; Adams v. Kehlor Milling Co. (C. C.) 35 Fed. 433; Consolidated Tank Line Co. v. Kansas City Varnish Co. (C. C.) 45 Fed. 7; Farmers' Loan & Trust Co. v. San Diego Car Co. (C. C.) 45 Fed. 519; Sutton Manufacturing Co. v. Hutchinson, 63 Fed. 496, 11 C. C. A. 320; Northwestern Mutual Life Insurance Co. v. Cotton Exchange Real Estate Co. (C. C.) 70 Fed. 155.

The case of Twin Lick Oil Co. v. Marbury, 91 U. S. 588, 23 L. Ed. 328, is in no respect opposed; the transaction there being nothing more than a loan of money in good faith to the corporation by one of its directors, secured by a deed of trust of its property, made at the time as a condition to the loan, which there is nothing in law or equity to prevent. The court at the same time takes pains to declare:

"That a director of a joint-stock corporation occupies one of those fiduciary relations where his dealings with the subject-matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, is viewed with jealousy by the courts, and may be set aside on slight grounds, is a doctrine founded on the soundest morality, * * * which has received the clearest recognition in this court"

—which suggests no intended departure from other cases. In Sanford Fork & Tool Co. v. Howe Co., 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713, also, the circumstances took the case out of the ordinary rule. The corporation there, although insolvent in the sense that it did not have sufficient property to pay its debts, was still a going concern and intended to continue its business, and the mortgage security given to its creditors was not to protect past indebtedness alone, but to procure an extension of the maturing paper of the company and obtain further advances of credit, all of which is very different from what we have here.

That a case is presented, in the present instance, within the rule so laid down, would seem to be clear. Of the insolvency of the corporation, at the time of the payments complained of, there can be no doubt. The indebtedness, including that which was preferred, amounted, as already stated, to $43,000, to meet which but $10,000 could be got together after turning every penny. The real estate was all that was left, and this was incumbered with a mortgage of $6,000, as it had been from the beginning, subject to which it was subsequently sold by the defendant, as receiver, for $5,250. So involved was the company that it could not pay its workmen their July wages, some $2,500, or at least

it did not; the money being used by the defendant to pay off the notes at bank instead. If there is any virtue, therefore, in the doctrine that officers of a bankrupt corporation cannot select and pay off the indebtedness for which they are individually liable to the detriment of other creditors, a case in which to apply it is fully made out.

It is said that the notes were called, and that the defendant had no option but to pay them, which rebuts the idea of fraud. But the banks were not the only creditors who were asking for their money. Nor is it as though payment was made to stave off failure and enable the company to keep on. With failure in sight and all parties demanding payment, the defendant simply saw fit to prefer those that would suit his own interest best. This was an abuse of his position, and not the equality of treatment which the law requires.

It is further said that the defendant was opposed to the receivership; his idea being that, if the principal stockholders would make good the amount that had been taken from the working capital, the company could still go on and succeed. But this does not do away with the effect of what had been done. It concedes the extremity that the company was in, which is not lessened by the fact that the defendant thought there was possibly a saving chance.

It is urged that, the notes having been paid, the other indorsers are discharged, and that it would not be fair to throw the whole burden on the defendant, as the bill seeks to do; but, if the defendant has got into any such dilemma, he has only himself to blame. The plaintiffs are not to be denied the relief which they are entitled to, because of this result.

It is also said that large payments were made to both the plaintiffs just before the company failed, and that, having themselves been preferred over other creditors, they are not in a position to complain. But this is not a proceeding in bankruptcy, where considerations of that kind might apply. There was nothing to prohibit them as creditors, subject only to being so called to account, from getting all that they could on their debts, and the responsibility of the defendant is not lessened thereby. It is to be observed, also, that suit is brought in the interest of all creditors, and not of the plaintiffs alone.

But, while the defendant should be made to restore that which was paid to the banks on the notes where he was indorser, a distinction is to be made, in my judgment, as to his salary and the cash advances which he had made. Salary, like wages, stands for daily bread; and to the extent of six months, at least, the amount due him was a preferred lien on the real and personal property of the company, which the defendant could have enforced. Scull's Appeal, 115 Pa. 141, 7 Atl. 588. Even without that, the salary being payable monthly, as it accrued, and having simply been deferred for the company's relief, it is going too far and making too large a demand on human nature to hold that he could not pay himself what was so his due when the end was in sight.

And this indulgence should be accorded, also, to the $515 of money advanced. This had been paid out for the company from time to time in small amounts to take care of pressing demands, as a temporary accommodation, until there should be funds to repay it, an arrangement

which the defendant simply enforced when the time came. It was not like the payment of long-standing loans, which were being carried on indorsements at bank. The distinction may be a narrow one; but the defendant is held to a heavy responsibility as it is.

The bill is sustained, and a decree directed to be entered in favor of plaintiffs to the extent indicated, with costs.